# FELDER *v.* CASEY ET AL.

No. 87–526.   Argued March 28, 1988—Decided June 22, 1988

132

BRENNAN, J., delivered the opinion of the Court, in which WHITE, MARSHALL, BLACKMUN, STEVENS, SCALIA, and KENNEDY, JJ., joined. WHITE, J., filed a concurring opinion, *post*, p. 153. O'CONNOR, J., filed a dissenting opinion, in which REHNQUIST, C. J., joined, *post*, p. 156.

*Steven H. Steinglass* argued the cause for petitioner. With him on the briefs was *Curry First.*

*Grant F. Langley* argued the cause for respondents. With him on the brief were *Rudolph M. Konrad* and *Reynold Scott Ritter.**

---

*Briefs of *amici curiae* urging affirmance were filed for the State of California et al. by *Donald J. Hanaway*, Attorney General of Wisconsin, and *Charles D. Hoornstra* and *Arleen E. Michor*, Assistant Attorneys

JUSTICE BRENNAN delivered the opinion of the Court.

A Wisconsin statute provides that before suit may be brought in state court against a state or local governmental entity or officer, the plaintiff must notify the governmental defendant of the circumstances giving rise to the claim, the amount of the claim, and his or her intent to hold the named defendant liable. The statute further requires that, in order to afford the defendant an opportunity to consider the requested relief, the claimant must refrain from filing suit for 120 days after providing such notice. Failure to comply with these requirements constitutes grounds for dismissal of the action. In the present case, the Supreme Court of Wisconsin held that this notice-of-claim statute applies to federal civil rights actions brought in state court under 42 U. S. C. § 1983. Because we conclude that these requirements are pre-empted as inconsistent with federal law, we reverse.

I

On July 4, 1981, Milwaukee police officers stopped petitioner Bobby Felder for questioning while searching his neighborhood for an armed suspect. The interrogation proved to be hostile and apparently loud, attracting the attention of petitioner's family and neighbors, who succeeded in convincing the police that petitioner was not the man they sought. According to police reports, the officers then directed petitioner to return home, but he continued to argue

General, and by the Attorneys General for their respective States as follows: *John K. Van de Kamp* of California, *Duane Woodard* of Colorado, *Jim Jones* of Idaho, *Linley E. Pearson* of Indiana, *Thomas J. Miller* of Iowa, *Frank J. Kelley* of Michigan, *Hal Stratton* of New Mexico, *Robert H. Henry* of Oklahoma, *LeRoy S. Zimmerman* of Pennsylvania, *David L. Wilkinson* of Utah, *Jeffrey Amestoy* of Vermont, *Mary Sue Terry* of Virginia, *Charles G. Brown* of West Virginia, and *Joseph B. Meyer* of Wyoming; for the State of South Dakota by *Roger A. Tellinghuisen*, Attorney General, and *Wade A. Hubbard* and *Craig M. Eichstadt*, Assistant Attorneys General; and for the International City Management Association et al. by *Benna Ruth Solomon, Beate Bloch,* and *Clifton S. Elgarten*.

and allegedly pushed one of them, thereby precipitating his arrest for disorderly conduct. Petitioner alleges that in the course of this arrest the officers beat him about the head and face with batons, dragged him across the ground, and threw him, partially unconscious, into the back of a paddy wagon face first, all in full view of his family and neighbors. Shortly afterwards, in response to complaints from these neighbors, a local city alderman and members of the Milwaukee Police Department arrived on the scene and began interviewing witnesses to the arrest. Three days later, the local alderman wrote directly to the chief of police requesting a full investigation into the incident. Petitioner, who is black, alleges that various members of the Police Department responded to this request by conspiring to cover up the misconduct of the arresting officers, all of whom are white. The Department took no disciplinary action against any of the officers, and the city attorney subsequently dropped the disorderly conduct charge against petitioner.

Nine months after the incident, petitioner filed this action in the Milwaukee County Circuit Court against the city of Milwaukee and certain of its police officers, alleging that the beating and arrest were unprovoked and racially motivated, and violated his rights under the Fourth and Fourteenth Amendments to the United States Constitution. He sought redress under 42 U. S. C. § 1983,[1] as well as attorney's fees pursuant to 42 U. S. C. § 1988. The officers moved to dis-

---

[1] Title 42 U. S. C. § 1983 provides in relevant part:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

Petitioner also stated a claim based on 42 U. S. C. § 1985(2), alleging a racially motivated conspiracy to interfere with his access to the state courts. The parties and the state courts below have treated these claims as identical for purposes of this suit, and we do so here as well.

miss the suit based on petitioner's failure to comply with the State's notice-of-claim statute.  That statute provides that no action may be brought or maintained against any state governmental subdivision, agency, or officer unless the claimant either provides written notice of the claim within 120 days of the alleged injury, or demonstrates that the relevant subdivision, agency, or officer had actual notice of the claim and was not prejudiced by the lack of written notice. Wis. Stat. § 893.80(1)(a) (1983 and Supp. 1987).[2]  The statute further provides that the party seeking redress must also

---

[2] Section 893.80 provides in relevant part:

"(1) Except as provided in sub. (1m), no action may be brought or maintained against any . . . governmental subdivision or agency thereof nor against any officer, official, agent or employe of the . . . subdivision or agency for acts done in their official capacity or in the course of their agency or employment upon a claim or cause of action unless:

"(a) Within 120 days after the happening of the event giving rise to the claim, written notice of the circumstances of the claim signed by the party, agent or attorney is served on the . . . governmental subdivision or agency and on the officer, official, agent or employe. . . . Failure to give the requisite notice shall not bar action on the claim if the . . . governmental subdivision or agency had actual notice of the claim and the claimant shows to the satisfaction of the court that the delay or failure to give the requisite notice has not been prejudicial to the defendant . . . subdivision or agency or to the defendant officer, official, agent or employe; and

"(b) A claim containing the address of the claimant and an itemized statement of the relief sought is presented to the appropriate clerk or person who performs the duties of a clerk or secretary for the defendant . . . subdivision or agency and the claim is disallowed.  Failure of the appropriate body to disallow within 120 days after presentation is a disallowance. Notice of disallowance shall be served on the claimant by registered or certified mail and the receipt therefor, signed by the claimant, or the returned registered letter, shall be proof of service.  No action on a claim against any defendant . . . subdivision or agency nor against any defendant officer, official, agent or employe may be brought after 6 months from the date of service of the notice, and the notice shall contain a statement to that effect."

Many States have adopted similar provisions.  See generally Civil Actions Against State Government, Its Divisions, Agencies, and Officers 559–569 (W. Winborne ed. 1982) (hereinafter Civil Actions).

submit an itemized statement of the relief sought to the governmental subdivision or agency, which then has 120 days to grant or disallow the requested relief. § 893.80(1)(b). Finally, claimants must bring suit within six months of receiving notice that their claim has been disallowed. *Ibid.*

The trial court granted the officers' motion as to all state-law causes of action but denied the motion as to petitioner's remaining federal claims. The Court of Appeals affirmed on the basis of its earlier decisions holding the notice-of-claim statute inapplicable to federal civil rights actions brought in state court. The Wisconsin Supreme Court, however, reversed. 139 Wis. 2d 614, 408 N. W. 2d 19 (1987). Passing on the question for the first time, the court reasoned that while Congress may establish the procedural framework under which claims are heard in federal courts, States retain the authority under the Constitution to prescribe the rules and procedures that govern actions in their own tribunals. Accordingly, a party who chooses to vindicate a congressionally created right in state court must abide by the State's procedures. Requiring compliance with the notice-of-claim statute, the court determined, does not frustrate the remedial and deterrent purposes of the federal civil rights laws because the statute neither limits the amount a plaintiff may recover for violation of his or her civil rights, nor precludes the possibility of such recovery altogether. Rather, the court reasoned, the notice requirement advances the State's legitimate interests in protecting against stale or fraudulent claims, facilitating prompt settlement of valid claims, and identifying and correcting inappropriate conduct by governmental employees and officials. Turning to the question of compliance in this case, the court concluded that the complaints lodged with the local police by petitioner's neighbors and the letter submitted to the police chief by the local alderman failed to satisfy the statute's actual notice standard, because these communications neither recited the facts giving

rise to the alleged injuries nor revealed petitioner's intent to hold the defendants responsible for those injuries.

We granted certiorari, 484 U. S. 942 (1987), and now reverse.

## II

No one disputes the general and unassailable proposition relied upon by the Wisconsin Supreme Court below that States may establish the rules of procedure governing litigation in their own courts. By the same token, however, where state courts entertain a federally created cause of action, the "federal right cannot be defeated by the forms of local practice." *Brown* v. *Western R. Co. of Alabama*, 338 U. S. 294, 296 (1949). The question before us today, therefore, is essentially one of pre-emption: is the application of the State's notice-of-claim provision to § 1983 actions brought in state courts consistent with the goals of the federal civil rights laws, or does the enforcement of such a requirement instead "'stan[d] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress'"? *Perez* v. *Campbell*, 402 U. S. 637, 649 (1971) (quoting *Hines* v. *Davidowitz*, 312 U. S. 52, 67 (1941)). Under the Supremacy Clause of the Federal Constitution, "[t]he relative importance to the State of its own law is not material when there is a conflict with a valid federal law," for "any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield." *Free* v. *Bland*, 369 U. S. 663, 666 (1962). Because the notice-of-claim statute at issue here conflicts in both its purpose and effects with the remedial objectives of § 1983, and because its enforcement in such actions will frequently and predictably produce different outcomes in § 1983 litigation based solely on whether the claim is asserted in state or federal court, we conclude that the state law is pre-empted when the § 1983 action is brought in a state court.

## A

Section 1983 creates a species of liability in favor of persons deprived of their federal civil rights by those wielding state authority.   As we have repeatedly emphasized, "the central objective of the Reconstruction-Era civil rights statutes . . . is to ensure that individuals whose federal constitutional or statutory rights are abridged may recover damages or secure injunctive relief."   *Burnett* v. *Grattan*, 468 U. S. 42, 55 (1984).   Thus, § 1983 provides "a uniquely federal remedy against incursions . . . upon rights secured by the Constitution and laws of the Nation," *Mitchum* v. *Foster*, 407 U. S. 225, 239 (1972), and is to be accorded "a sweep as broad as its language."   *United States* v. *Price*, 383 U. S. 787, 801 (1966).

Any assessment of the applicability of a state law to federal civil rights litigation, therefore, must be made in light of the purpose and nature of the federal right.   This is so whether the question of state-law applicability arises in § 1983 litigation brought in state courts, which possess concurrent jurisdiction over such actions, see *Patsy* v. *Board of Regents of Florida*, 457 U. S. 496, 506–507 (1982), or in federal-court litigation, where, because the federal civil rights laws fail to provide certain rules of decision thought essential to the orderly adjudication of rights, courts are occasionally called upon to borrow state law.   See 42 U. S. C. § 1988.   Accordingly, we have held that a state law that immunizes government conduct otherwise subject to suit under § 1983 is preempted, even where the federal civil rights litigation takes place in state court, because the application of the state immunity law would thwart the congressional remedy, see *Martinez* v. *California*, 444 U. S. 277, 284 (1980), which of course already provides certain immunities for state officials.   See *e. g., Davis* v. *Scherer*, 468 U. S. 183 (1984); *Stump* v. *Sparkman*, 435 U. S. 349 (1978); *Imbler* v. *Pachtman*, 424 U. S. 409 (1976).   Similarly, in actions brought in federal courts, we have disapproved the adoption of state statutes of limita-

tion that provide only a truncated period of time within which to file suit, because such statutes inadequately accommodate the complexities of federal civil rights litigation and are thus inconsistent with Congress' compensatory aims. *Burnett, supra,* at 50–55. And we have directed the lower federal courts in § 1983 cases to borrow the state-law limitations period for personal injury claims because it is "most unlikely that the period of limitations applicable. to such claims ever was, or ever would be, fixed [by the forum State] in a way that would discriminate against federal claims, or be inconsistent with federal law in any respect." *Wilson* v. *Garcia,* 471 U. S. 261, 279 (1985).

Although we have never passed on the question, the lower federal courts have all, with but one exception, concluded that notice-of-claim provisions are inapplicable to § 1983 actions brought in federal court. See *Brown* v. *United States,* 239 U. S. App. D. C. 345, 356, n. 6, 742 F. 2d 1498, 1509, n. 6 (1984) (en banc) (collecting cases); but see *Cardo* v. *Lakeland Central School Dist.,* 592 F. Supp. 765, 772–773 (SDNY 1984). These courts have reasoned that, unlike the lack of statutes of limitations in the federal civil rights laws, the absence of any notice-of-claim provision is not a deficiency requiring the importation of such statutes into the federal civil rights scheme. Because statutes of limitation are among the universally familiar aspects of litigation considered indispensable to any scheme of justice, it is entirely reasonable to assume that Congress did not intend to create a right enforceable in perpetuity. Notice-of-claim provisions, by contrast, are neither universally familiar nor in any sense indispensable prerequisites to litigation, and there is thus no reason to suppose that Congress intended federal courts to apply such rules, which "significantly inhibit the ability to bring federal actions." 239 U. S. App. D. C., at 354, 742 F. 2d, at 1507.

While we fully agree with this near-unanimous conclusion of the federal courts, that judgment is not dispositive here, where the question is not one of adoption but of pre-emption.

Nevertheless, this determination that notice-of-claim statutes are inapplicable to federal-court § 1983 litigation informs our analysis in two crucial respects. First, it demonstrates that the application of the notice requirement burdens the exercise of the federal right by forcing civil rights victims who seek redress in state courts to comply with a requirement that is entirely absent from civil rights litigation in federal courts. This burden, as we explain below, is inconsistent in both design and effect with the compensatory aims of the federal civil rights laws. Second, it reveals that the enforcement of such statutes in § 1983 actions brought in state court will frequently and predictably produce different outcomes in federal civil rights litigation based solely on whether that litigation takes place in state or federal court. States may not apply such an outcome-determinative law when entertaining substantive federal rights in their courts.

## B

As we noted above, the central purpose of the Reconstruction-Era laws is to provide compensatory relief to those deprived of their federal rights by state actors. Section 1983 accomplishes this goal by creating a form of liability that, by its very nature, runs only against a specific class of defendants: government bodies and their officials. Wisconsin's notice-of-claim statute undermines this "uniquely federal remedy," *Mitchum* v. *Foster, supra*, at 239, in several interrelated ways. First, it conditions the right of recovery that Congress has authorized, and does so for a reason manifestly inconsistent with the purposes of the federal statute: to minimize governmental liability. Nor is this condition a neutral and uniformly applicable rule of procedure; rather, it is a substantive burden imposed only upon those who seek redress for injuries resulting from the use or misuse of governmental authority. Second, the notice provision discriminates against the federal right. While the State affords the victim of an intentional tort two years to recognize the com-

pensable nature of his or her injury, the civil rights victim is given only four months to appreciate that he or she has been deprived of a federal constitutional or statutory right. Finally, the notice provision operates, in part, as an exhaustion requirement, in that it forces claimants to seek satisfaction in the first instance from the governmental defendant. We think it plain that Congress never intended that those injured by governmental wrongdoers could be required, as a condition of recovery, to submit their claims to the government responsible for their injuries.

### (1)

Wisconsin's notice-of-claim statute is part of a broader legislative scheme governing the rights of citizens to sue the State's subdivisions. The statute, both in its earliest and current forms, provides a circumscribed waiver of local governmental immunity that limits the amount recoverable in suits against local governments and imposes the notice requirements at issue here. Although the Wisconsin Supreme Court has held that the statutory limits on recovery are preempted in federal civil rights actions, *Thompson* v. *Village of Hales Corners*, 115 Wis. 2d 289, 340 N. W. 2d 704 (1983), and thus recognizes that partial immunities inconsistent with § 1983 must yield to the federal right, it concluded in the present case that the notice and exhaustion conditions attached to the waiver of such immunities may nevertheless be enforced in federal actions. The purposes of these conditions, however, mirror those of the judicial immunity the statute replaced. Such statutes "are enacted primarily for the benefit of governmental defendants," Civil Actions, at 564, and enable those defendants to "investigate early, prepare a stronger case, and perhaps reach an early settlement." *Brown* v. *United States, supra,* at 353, 742 F. 2d, at 1506. Moreover, where the defendant is unable to obtain a satisfactory settlement, the Wisconsin statute forces claimants to bring suit within a relatively short period after the local gov-

erning body disallows the claim, in order to "assure prompt initiation of litigation." *Gutter* v. *Seamandel*, 103 Wis. 2d 1, 22, 308 N. W. 2d 403, 413 (1981). To be sure, the notice requirement serves the additional purpose of notifying the proper public officials of dangerous physical conditions or inappropriate and unlawful governmental conduct, which allows for prompt corrective measures. See *Nielsen* v. *Town of Silver Cliff*, 112 Wis. 2d 574, 580, 334 N. W. 2d 242, 245 (1983); *Binder* v. *Madison*, 72 Wis. 2d 613, 623, 241 N. W. 2d 613, 618 (1976). This interest, however, is clearly not the predominant objective of the statute. Indeed, the Wisconsin Supreme Court has emphasized that the requisite notice must spell out both the amount of damages the claimant seeks and his or her intent to hold the governing body responsible for those damages precisely because these requirements further the State's interest in minimizing liability and the expenses associated with it. See *Gutter, supra*, at 10–11, 308 N. W. 2d, at 407 (statute's purpose cannot be served unless the claim demands a specific sum of money); *Pattermann* v. *Whitewater*, 32 Wis. 2d 350, 355–359, 145 N. W. 2d 705, 708–709 (1966) (distinguishing notice-of-injury from notice-of-claim requirement).

In sum, as respondents explain, the State has chosen to expose its subdivisions to large liability and defense costs, and, in light of that choice, has made the concomitant decision to impose conditions that "assis[t] municipalities in controlling those costs." Brief for Respondents 12. The decision to subject state subdivisions to liability for violations of federal rights, however, was a choice that Congress, not the Wisconsin Legislature, made, and it is a decision that the State has no authority to override. Thus, however understandable or laudable the State's interest in controlling liability expenses might otherwise be, it is patently incompatible with the compensatory goals of the federal legislation, as are the means the State has chosen to effectuate it.

This incompatibility is revealed by the design of the notice-of-claim statute itself, which operates as a condition precedent to recovery in all actions brought in state court against governmental entities or officers. *Sambs* v. *Nowak*, 47 Wis. 2d 158, 167, 177 N. W. 2d 144, 149 (1970). "Congress," we have previously noted, "surely did not intend to assign to state courts and legislatures a conclusive role in the formative function of defining and characterizing the essential elements of a federal cause of action." *Wilson*, 471 U. S., at 269. Yet that is precisely the consequence of what Wisconsin has done here: although a party bringing suit against a local governmental unit need not allege compliance with the notice statute as part of his or her complaint, *Nielsen*, *supra*, at 580, 334 N. W. 2d, at 245, the statute confers on governmental defendants an affirmative defense that obligates the plaintiff to demonstrate compliance with the notice requirement before he or she may recover at all, a showing altogether unnecessary when such an action is brought in federal court. States, however, may no more condition the federal right to recover for violations of civil rights than bar that right altogether, particularly where those conditions grow out of a waiver of immunity which, however necessary to the assertion of state-created rights against local governments, is entirely irrelevant insofar as the assertion of the federal right is concerned, see *Martinez*, 444 U. S., at 284, and where the purpose and effect of those conditions, when applied in § 1983 actions, is to control the expense associated with the very litigation Congress has authorized.

This burdening of a federal right, moreover, is not the natural or permissible consequence of an otherwise neutral, uniformly applicable state rule. Although it is true that the notice-of-claim statute does not discriminate between state and federal causes of action against local governments, the fact remains that the law's protection extends only to governmental defendants and thus conditions the right to bring suit against the very persons and entities Congress intended to

subject to liability. We therefore cannot accept the suggestion that this requirement is simply part of "the vast body of procedural rules, rooted in policies unrelated to the definition of any particular substantive cause of action, that forms no essential part of 'the cause of action' as applied to any given plaintiff." Brief for International City Management Association et al. as *Amici Curiae* 22 (Brief for *Amici Curiae*). On the contrary, the notice-of-claim provision is imposed only upon a specific class of plaintiffs—those who sue governmental defendants—and, as we have seen, is firmly rooted in policies very much related to, and to a large extent directly contrary to, the substantive cause of action provided those plaintiffs. This defendant-specific focus of the notice requirement serves to distinguish it, rather starkly, from rules uniformly applicable to all suits, such as rules governing service of process or substitution of parties, which respondents cite as examples of procedural requirements that penalize noncompliance through dismissal. That state courts will hear the entire § 1983 cause of action once a plaintiff complies with the notice-of-claim statute, therefore, in no way alters the fact that the statute discriminates against the precise type of claim Congress has created.

### (2)

While respondents and *amici* suggest that prompt investigation of claims inures to the benefit of claimants and local governments alike, by providing both with an accurate factual picture of the incident, such statutes "are enacted *primarily* for the benefit of governmental defendants," and are intended to afford such defendants an opportunity to prepare a stronger case. Civil Actions, at 564 (emphasis added); see also *Brown* v. *United States*, 239 U. S. App. D. C., at 354, 742 F. 2d, at 1506. Sound notions of public administration may support the prompt notice requirement, but those policies necessarily clash with the remedial purposes of the federal civil rights laws. In *Wilson*, we held that, for purposes

of choosing a limitations period for § 1983 actions, federal courts must apply the state statute of limitations governing personal injury claims because it is highly unlikely that States would ever fix the limitations period applicable to such claims in a manner that would discriminate against the federal right. Here, the notice-of-claim provision most emphatically does discriminate in a manner detrimental to the federal right: only those persons who wish to sue governmental defendants are required to provide notice within such an abbreviated time period. Many civil rights victims, however, will fail to appreciate the compensable nature of their injuries within the 4-month window provided by the notice-of-claim provision,[3] and will thus be barred from asserting their federal right to recovery in state court unless they can show that the defendant had actual notice of the injury, the circumstances giving rise to it, and the claimant's intent to hold the defendant responsible — a showing which, as the facts of this case vividly demonstrate, is not easily made in Wisconsin.

(3)

Finally, the notice provision imposes an exhaustion requirement on persons who choose to assert their federal right in state courts, inasmuch as the § 1983 plaintiff must provide the requisite notice of injury within 120 days of the civil rights violation, then wait an additional 120 days while the

[3] The notice-of-claim statute does not require that claimants recognize or specify the constitutional nature of their injuries before they may initiate a § 1983 action. Certain constitutional injuries, of course, such as the deprivation of liberty petitioner suffered here, will have obvious and readily recognized common-law tort analogues, e. g., battery. Although the State affords the victim of such an intentional tort two years to appreciate that he or she has suffered a compensable injury, Wis. Stat. § 893.57 (1983), it drastically reduces the time period when the tortfeasor is a governmental officer or employee. Moreover, many other deprivations, such as those involving denial of due process or of equal protection, will be far more subtle. In the latter, and by no means negligible, category of constitutional injuries, victims will frequently fail to recognize within the 4-month statutory period that they have been wronged at all.

governmental defendant investigates the claim and attempts to settle it. In *Patsy* v. *Board of Regents of Florida*, 457 U. S. 496 (1982), we held that plaintiffs need not exhaust state administrative remedies before instituting § 1983 suits in federal court. The Wisconsin Supreme Court, however, deemed that decision inapplicable to this state-court suit on the theory that States retain the authority to prescribe the rules and procedures governing suits in their courts. 139 Wis. 2d, at 623, 408 N. W. 2d, at 23. As we have just explained, however, that authority does not extend so far as to permit States to place conditions on the vindication of a federal right. Moreover, as we noted in *Patsy*, Congress enacted § 1983 in response to the widespread deprivations of civil rights in the Southern States and the inability or unwillingness of authorities in those States to protect those rights or punish wrongdoers. *Patsy, supra*, at 503–505; see also *Wilson* v. *Garcia*, 471 U. S., at 276–277, 279. Although it is true that the principal remedy Congress chose to provide injured persons was immediate access to *federal* courts, *Patsy, supra*, at 503–504, it did not leave the protection of such rights exclusively in the hands of the federal judiciary, and instead conferred concurrent jurisdiction on state courts as well. 457 U. S., at 506–507. Given the evil at which the federal civil rights legislation was aimed, there is simply no reason to suppose that Congress meant "to provide these individuals immediate access to the federal courts notwithstanding any provision of state law to the contrary," *id.*, at 504, yet contemplated that those who sought to vindicate their federal rights in state courts could be required to seek redress in the first instance from the very state officials whose hostility to those rights precipitated their injuries.[4]

---

[4] Several *amici* note that "even the reform-minded Congress of the post-Civil War era did not undertake to try to reform state court procedures in the field of constitutional adjudication," Brief for *Amici Curiae* 14, and conclude from this that Congress "did not intend to interfere with procedural perquisites of the States and their courts." *Id.*, at 16. This argu-

Respondents nevertheless argue that any exhaustion requirement imposed by the notice-of-claim statute is essentially *de minimis* because the statutory settlement period entails none of the additional expense or undue delay typically associated with administrative remedies, and indeed does not alter a claimant's right to seek full compensation through suit. This argument fails for two reasons. First, it ignores our prior assessment of "the dominant characteristic of civil rights actions: *they belong in court.*" *Burnett,* 468 U. S., at 50 (emphasis added). "These causes of action," we have explained, "exist independent of any other legal or administrative relief that may be available as a matter of federal or state law. They are judicially enforceable *in the first instance.*" *Ibid.* (emphasis added). The dominant characteristic of a § 1983 action, of course, does not vary depending upon whether it is litigated in state or federal court, and States therefore may not adulterate or dilute the predominant feature of the federal right by imposing mandatory settlement periods, no matter how reasonable the administrative waiting period or the interests it is designed to serve may appear.

Second, our decision in *Patsy* rested not only on the legislative history of § 1983 itself, but also on the facts that in the Civil Rights of Institutionalized Persons Act of 1980, 94 Stat. 353, 42 U. S. C. § 1997e, Congress established an exhaustion requirement for a specific class of § 1983 actions — those brought by adult prisoners challenging the conditions of

---

ment misses its mark. The defects Congress perceived in state courts lay in their jury factfinding processes, which of course were skewed by local prejudices, see *Patsy* v. *Board of Regents of Florida,* 457 U. S., at 506, and not in their otherwise neutral rules of procedure. The fact that Congress saw no need to alter these neutral procedural rules in no way suggests that all *future* state-court procedures, including exhaustion requirements that were unheard of at the time of § 1983's enactment and which apply only to injuries inflicted by the very targets of that statute, would similarly be consistent with the purposes and intent of the federal civil rights laws.

their confinement — and that, in so doing, Congress expressly recognized that it was working a change in the law. Accordingly, we refused to engraft an exhaustion requirement onto another type of § 1983 action where Congress had not provided for one, not only because the judicial imposition of such a requirement would be inconsistent with Congress' recognition that § 1983 plaintiffs normally need not exhaust administrative remedies, 457 U. S., at 508–512, but also because decisions concerning both the desirability and the scope and design of any exhaustion requirement turn on a host of policy considerations which "do not invariably point in one direction," and which, for that very reason, are best left to "Congress' superior institutional competence." *Id.*, at 513. "[P]olicy considerations alone," we concluded, "cannot justify judicially imposed exhaustion unless exhaustion is consistent with congressional intent." *Ibid.* While the exhaustion required by Wisconsin's notice-of-claim statute does not involve lengthy or expensive administrative proceedings, it forces injured persons to seek satisfaction from those alleged to have caused the injury in the first place. Such a dispute resolution system may have much to commend it, but that is a judgment the current Congress must make, for we think it plain that the Congress which enacted § 1983 over 100 years ago would have rejected as utterly inconsistent with the remedial purposes of its broad statute the notion that a State could require civil rights victims to seek compensation from offending state officials before they could assert a federal action in state court.

Finally, to the extent the exhaustion requirement is designed to sift out "specious claims" from the stream of complaints that can inundate local governments in the absence of immunity, see *Nielsen*, 112 Wis. 2d, at 580, 334 N. W. 2d, at 245, we have rejected such a policy as inconsistent with the aims of the federal legislation. In *Burnett*, state officials urged the adoption of a 6-month limitations period in a § 1983 action in order that they might enjoy "some reasonable pro-

tection from the seemingly endless stream of unfounded, and often stale, lawsuits brought against them." 468 U. S., at 54 (internal quotation marks omitted; citation omitted). Such a contention, we noted, "reflects in part a judgment that factors such as minimizing the diversion of state officials' attention from their duties outweigh the interest in providing [claimants] ready access to a forum to resolve valid claims." *Id.*, at 55. As we explained there, and reaffirm today, "[t]hat policy is manifestly inconsistent with the central objective of the Reconstruction-Era civil rights statutes." *Ibid.*

### C

Respondents and their supporting *amici* urge that we approve the application of the notice-of-claim statute to § 1983 actions brought in state court as a matter of equitable federalism. They note that "'[t]he general rule, bottomed deeply in belief in the importance of state control of state judicial procedure, is that federal law takes the state courts as it finds them.'" Brief for *Amici Curiae* 8 (quoting Hart, The Relations Between State and Federal Law, 54 Colum. L. Rev. 489, 508 (1954)). Litigants who choose to bring their civil rights actions in state courts presumably do so in order to obtain the benefit of certain procedural advantages in those courts, or to draw their juries from urban populations. Having availed themselves of these benefits, civil rights litigants must comply as well with those state rules they find less to their liking.

However equitable this bitter-with-the-sweet argument may appear in the abstract, it has no place under our Supremacy Clause analysis. Federal law takes state courts as it finds them only insofar as those courts employ rules that do not "impose unnecessary burdens upon rights of recovery authorized by federal laws." *Brown* v. *Western R. Co. of Alabama*, 338 U. S., at 298–299; see also *Monessen Southwestern R. Co.* v. *Morgan*, 486 U. S. 330, 336 (1988) (state rule designed to encourage settlement cannot limit recovery

in federally created action). States may make the litigation of federal rights as congenial as they see fit—not as a *quid pro quo* for compliance with other, uncongenial rules, but because such congeniality does not stand as an obstacle to the accomplishment of Congress' goals. As we have seen, enforcement of the notice-of-claim statute in § 1983 actions brought in state court so interferes with and frustrates the substantive right Congress created that, under the Supremacy Clause, it must yield to the federal interest. This interference, however, is not the only consequence of the statute that renders its application in § 1983 cases invalid. In a State that demands compliance with such a statute before a § 1983 action may be brought or maintained in its courts, the outcome of federal civil rights litigation will frequently and predictably depend on whether it is brought in state or federal court. Thus, the very notions of federalism upon which respondents rely dictate that the State's outcome-determinative law must give way when a party asserts a federal right in state court.

Under *Erie R. Co.* v. *Tompkins*, 304 U. S. 64 (1938), when a federal court exercises diversity or pendent jurisdiction over state-law claims, "the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court." *Guaranty Trust Co.* v. *York*, 326 U. S. 99, 109 (1945). Accordingly, federal courts entertaining state-law claims against Wisconsin municipalities are obligated to apply the notice-of-claim provision. See *Orthmann* v. *Apple River Campground, Inc.*, 757 F. 2d 909, 911 (CA7 1985). Just as federal courts are constitutionally obligated to apply state law to state claims, see *Erie, supra,* at 78–79, so too the Supremacy Clause imposes on state courts a constitutional duty "to proceed in such manner that all the substantial rights of the parties under controlling federal law [are] protected." *Garrett* v. *Moore-McCormack Co.*, 317 U. S. 239, 245 (1942).

Civil rights victims often do not appreciate the constitutional nature of their injuries, see *Burnett,* 468 U. S., at 50, and thus will fail to file a notice of injury or claim within the requisite time period, see n. 3, *supra,* which in Wisconsin is a mere four months. Unless such claimants can prove that the governmental defendant had actual notice of the claim, which, as we have already noted, is by no means a simple task in Wisconsin, and unless they also file an itemized claim for damages, they must bring their § 1983 suits in federal court or not at all. Wisconsin, however, may not alter the outcome of federal claims it chooses to entertain in its courts by demanding compliance with outcome-determinative rules that are inapplicable when such claims are brought in federal court, for "'[w]hatever springes the State may set for those who are endeavoring to assert rights that the State confers, the assertion of federal rights, when plainly and reasonably made, is not to be defeated under the name of local practice.'" *Brown* v. *Western R. Co. of Alabama, supra,* at 298–299 (quoting *Davis* v. *Wechsler,* 263 U. S. 22, 24 (1923)). The state notice-of-claim statute is more than a mere rule of procedure: as we discussed above, the statute is a substantive condition on the right to sue governmental officials and entities, and the federal courts have therefore correctly recognized that the notice statute governs the adjudication of state-law claims in diversity actions. *Orthmann, supra,* at 911. In *Guaranty Trust, supra,* we held that, in order to give effect to a State's statute of limitations, a federal court could not hear a state-law action that a state court would deem time barred. Conversely, a state court may not decline to hear an otherwise properly presented federal claim because that claim would be barred under a state law requiring timely filing of notice. State courts simply are not free to vindicate the substantive interests underlying a state rule of decision at the expense of the federal right.

Finally, in *Wilson,* we characterized § 1983 suits as claims for personal injuries because such an approach ensured that

the same limitations period would govern all § 1983 actions brought in any given State, and thus comported with Congress' desire that the federal civil rights laws be given a uniform application within each State. 471 U. S., at 274–275. A law that predictably alters the outcome of § 1983 claims depending solely on whether they are brought in state or federal court within the same State is obviously inconsistent with this federal interest in intrastate uniformity.

## III

In enacting § 1983, Congress entitled those deprived of their civil rights to recover full compensation from the governmental officials responsible for those deprivations. A state law that conditions that right of recovery upon compliance with a rule designed to minimize governmental liability, and that directs injured persons to seek redress in the first instance from the very targets of the federal legislation, is inconsistent in both purpose and effect with the remedial objectives of the federal civil rights law. Principles of federalism, as well as the Supremacy Clause, dictate that such a state law must give way to vindication of the federal right when that right is asserted in state court.

Accordingly, the judgment of the Supreme Court of Wisconsin is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

JUSTICE WHITE, concurring.

It cannot be disputed that, if Congress had included a statute of limitations in 42 U. S. C. § 1983, any state court that entertained a § 1983 suit would have to apply that statute of limitations. As the Court observed in an early case brought under the Federal Employers' Liability Act of 1908, 35 Stat. 65, 45 U. S. C. § 51 *et seq.*, "[i]f [a federal Act] be available in a state court to found a right, and the record shows a lapse of

time after which the [A]ct says that no action shall be maintained, the action must fail in the courts of a State as in those of the United States." *Atlantic Coast Line R. Co.* v. *Burnette*, 239 U. S. 199, 201 (1915). See also *Engel* v. *Davenport*, 271 U. S. 33, 38–39 (1926); *McAllister* v. *Magnolia Petroleum Co.*, 357 U. S. 221, 228 (1958) (BRENNAN, J., concurring).

Similarly, where the Court has determined that a particular state statute of limitations ought to be borrowed in order to effectuate the congressional intent underlying a federal cause of action that contains no statute of limitations of its own, any state court that entertains the same federal cause of action must apply the same state statute of limitations. We made such a determination in *Wilson* v. *Garcia*, 471 U. S. 261 (1985), which held that § 1983 suits must as a matter of federal law[1] be governed by the state statute of limitations applicable to tort suits for the recovery of damages for personal injuries. We reasoned that the choice of a single statute of limitations within each State was supported by "[t]he federal interests in uniformity, certainty, and the minimization of unnecessary litigation," *id.*, at 275, and that the choice of the personal-injury statute of limitations was supported by "the nature of the § 1983 remedy, and by the federal interest in ensuring that the borrowed period of limitations not discriminate against the federal civil rights remedy." *Id.*, at 276.

It has since been assumed that *Wilson* v. *Garcia* governs the timeliness of § 1983 suits brought in state as well as federal court. See, *e. g.*, *Russell* v. *Anchorage*, 743 P. 2d 372, 374–375, and n. 8 (Alaska 1987); *Ziccardi* v. *Pennsylvania Dept. of General Services*, 109 Pa. Commw. 628, 634–

---

[1] In explaining that the characterization of § 1983 claims for statute-of-limitations purposes is a question of federal law, we observed that "Congress surely did not intend to assign to state courts and legislatures a conclusive role in the formative function of defining and characterizing the essential elements of a federal cause of action." 471 U. S., at 269.

635, 527 A. 2d 183, 185–186 (1987); *Walker* v. *Maruffi*, 105 N. M. 763, 766–769, 737 P. 2d 544, 547–550 (App.), cert. denied, 105 N. M. 707, 736 P. 2d 985 (1987) (table); *Maddocks* v. *Salt Lake City Corp.*, 740 P. 2d 1337, 1338–1339 (Utah 1987); *423 South Salina Street, Inc.* v. *Syracuse*, 68 N. Y. 2d 474, 486–487; 503 N. E. 2d 63, 69–70 (1986), appeal dism'd, 481 U. S. 1008 (1987); *Fuchilla* v. *Layman*, 210 N. J. Super. 574, 582–583, 510 A. 2d 281, 286 (1986), aff'd, 109 N. J. 319, 537 A. 2d 652 (1988); *Henderson* v. *State*, 110 Idaho 308, 311, 715 P. 2d 978, 981, cert. denied, 477 U. S. 907 (1986); *Frisby* v. *Board of Education of Boyle County*, 707 S. W. 2d 359, 361 (Ky. App. 1986); *Vanaman* v. *Palmer*, 506 A. 2d 190 (Del. Super. 1986); *Hanson* v. *Madison Service Corp.*, 125 Wis. 2d 138, 141, 370 N. W. 2d 586, 588 (App. 1985).

The Wisconsin Supreme Court likewise assumed that *Wilson* v. *Garcia* governed which statute of limitations should apply to petitioner's § 1983 claim.[2]  The court then effectively truncated the applicable limitations period, however, by dismissing petitioner's § 1983 suit for failure to file a notice of claim within 120 days of the events at issue as required by Wis. Stat. § 893.80 (1983 and Supp. 1987).[3]  Hence, petitioner was allowed only about four months in which to investigate whether the facts and the law would support any claim

---

[2] The court did not decide whether the § 1983 claim was to be governed by the 2-year statute of limitations applicable to intentional torts, Wis. Stat. § 893.57 (1983), or the 3-year statute of limitations applicable generally to "injuries to the person," § 893.54(1).

[3] To be sure, § 893.80 provides that failure to file a notice of claim within the initial 120-day period "shall not bar an action on the claim if the . . . [governmental] subdivision or agency had actual notice of the claim and the claimant shows to the satisfaction of the court that the delay or failure to give the requisite notice has not been prejudicial to the defendant."  The facts of this case demonstrate, however, that the "actual notice" requirement is difficult to satisfy.  For example, the Wisconsin Supreme Court held that respondents had not received "actual notice" of petitioner's claim even though the local alderman had written directly to the chief of police requesting an investigation of the incident only three days after its occurrence.  139 Wis. 2d 614, 629–630, 408 N. W. 2d 19, 25–26 (1987).

against respondents (or retain a lawyer who would do so), and to notify respondents of his claim, rather than the two or three years that he would have been allowed under Wisconsin law had he sought to assert a similar personal-injury claim against a private party. It is also unlikely that any other State would apply a 120-day limitations period—or, indeed, a limitations period of less than one year—to such a personal-injury claim.[4] This reflects a generally accepted belief among state policymakers that individuals who have suffered injuries to their personal rights cannot fairly be expected to seek redress within so short a period of time.

The application of the Wisconsin notice-of-claim statute to bar petitioner's § 1983 suit—which is "in reality, 'an action for injury to personal rights'" 471 U. S., at 265 (quoting 731 F. 2d 640, 651 (CA10 1984) (opinion below))—thus undermines the purposes of *Wilson* v. *Garcia* to promote "[t]he federal interests in uniformity, certainty, and the minimization of unnecessary litigation," 471 U. S., at 275, and assure that state procedural rules do not "discriminate against the federal civil rights remedy." *Id.*, at 276. I therefore agree that in view of the adverse impact of Wisconsin's notice-of-claim statute on the federal policies articulated in *Wilson* v. *Garcia*, the Supremacy Clause proscribes the statute's application to § 1983 suits brought in Wisconsin state courts.

JUSTICE O'CONNOR, with whom THE CHIEF JUSTICE joins, dissenting.

"A state statute cannot be considered 'inconsistent' with federal law merely because the statute causes the plaintiff to lose the litigation." *Robertson* v. *Wegmann*, 436 U. S. 584,

---

[4] See Shapiro, Choosing the Appropriate State Statute of Limitations for Section 1983 Claims After *Wilson* v. *Garcia*, 16 U. Balt. L. Rev. 242, 245–246 (1987) (listing potentially applicable limitations periods of 26 States and District of Columbia); Comment, 17 Memphis St. U. L. Rev. 127, 136–137, n. 74 (1986) (listing potentially applicable limitations periods of 29 States, District of Columbia, and Puerto Rico).

593 (1978). Disregarding this self-evident principle, the Court today holds that Wisconsin's notice of claim statute is pre-empted by federal law as to actions under 42 U. S. C. § 1983 filed in state court. This holding is not supported by the statute whose pre-emptive force it purports to invoke, or by our precedents. Relying only on its own intuitions about "the goals of the federal civil rights laws," *ante*, at 138, the Court fashions a new theory of pre-emption that unnecessarily and improperly suspends a perfectly valid state statute. This Court has said that "unenacted approvals, beliefs, and desires are not laws." *Puerto Rico Dept. of Consumer Affairs* v. *Isla Petroleum Corp.*, 485 U. S. 495, 501 (1988). Today's exercise departs not only from that unquestionable proposition, but even from the much more obvious principle that unexpressed approvals, beliefs, and desires are not laws.

Wisconsin's notice of claim statute, which imposes a limited exhaustion of remedies requirement on those with claims against municipal governments and their officials, serves at least two important purposes apart from providing municipal defendants with a special affirmative defense in litigation. First, the statute helps ensure that public officials will receive prompt notice of wrongful conditions or practices, and thus enables them to take prompt corrective action. Second, it enables officials to investigate claims in a timely fashion, thereby making it easier to ascertain the facts accurately and to settle meritorious claims without litigation. These important aspects of the Wisconsin statute bring benefits to governments and claimants alike, and it should come as no surprise that 37 other States have apparently adopted similar notice of claim requirements. App. to Brief for International City Management Association et al. as *Amici Curiae* 1a–2a. Without some compellingly clear indication that Congress has forbidden the States to apply such statutes in their own courts, there is no reason to conclude that they are "preempted" by federal law. Allusions to such vague concepts

as "the compensatory aims of the federal civil rights laws," *ante*, at 141, which are all that the Court actually relies on, do not provide an adequate substitute for the statutory analysis that we customarily require of ourselves before we reach out to find statutory pre-emption of legitimate procedures used by the States in their own courts.

Section 1983, it is worth recalling, creates no substantive law. It merely provides one vehicle by which certain provisions of the Constitution and other federal laws may be judicially enforced. Its purpose, as we have repeatedly said, "'was to interpose the *federal courts* between the States and the people, as guardians of the people's federal rights . . . .'" *Patsy* v. *Board of Regents of Florida*, 457 U. S. 496, 503 (1982) (quoting *Mitchum* v. *Foster*, 407 U. S. 225, 242 (1972)) (emphasis added). For that reason, the original version of § 1983 provided that the federal courts would have exclusive jurisdiction of actions arising under it. See Civil Rights Act of 1871, ch. 22, § 1, 17 Stat. 13. This fact is conclusive proof that the "Congress which enacted § 1983 over 100 years ago," *ante*, at 149, could not possibly have meant thereby to alter the operation of state courts in any way or to "pre-empt" them from using procedural statutes like the one at issue today.

State courts may now entertain § 1983 actions if a plaintiff chooses a state court over the federal forum that is always available as a matter of right. See, *e. g.*, *Martinez* v. *California*, 444 U. S. 277, 283, and n. 7 (1980). Abandoning the rule of exclusive federal jurisdiction over § 1983 actions, and thus restoring the tradition of concurrent jurisdiction, however, "did not leave behind a pre-emptive grin without a statutory cat." *Puerto Rico Dept. of Consumer Affairs* v. *Isla Petroleum Corp.*, *supra*, at 504. Congress has never given the slightest indication that § 1983 was meant to replace state procedural rules with those that apply in the federal courts. The majority does not, because it cannot, cite any evidence to the contrary.

In an effort to remedy this fatal defect in its position, the majority engages in an extended discussion of *Patsy* v. *Board of Regents of Florida, supra.* See *ante*, at 147–149. *Patsy*, however, actually undermines the majority's conclusion. In that case, the Court concluded that state exhaustion of remedies requirements were not to be applied in § 1983 actions brought in *federal court.* The Court relied on legislative history indicating that § 1983 was meant to provide a federal forum with characteristics *different* from those in the state courts, 457 U. S., at 502–507, and it came only to the limited and hesitant conclusion that "it seems fair to infer that the 1871 Congress did not intend that an individual be compelled *in every case* to exhaust state administrative remedies before filing an action under [§ 1983]," *id.*, at 507 (emphasis added). Even this limited conclusion, the Court admitted, was "somewhat precarious," *ibid.*, which would have made no sense if the Court had been able to rely on the more general proposition—from which the holding in *Patsy* follows *a fortiori*—that it adopts today.

*Patsy* also relied on the Civil Rights of Institutionalized Persons Act of 1980, § 7, 94 Stat. 352, 42 U. S. C. § 1997e, which ordinarily requires exhaustion of state remedies before an adult prisoner can bring a § 1983 action in federal court. The Court concluded that the "legislative history of § 1997e demonstrates that Congress has taken the approach of carving out specific exceptions to the general rule that *federal courts* cannot require exhaustion under § 1983." 457 U. S., at 512 (emphasis added). This finding lends further support to the proposition that Congress has never concerned itself with the application of exhaustion requirements in *state* courts, and § 1997e conclusively shows that Congress does not believe that such requirements are somehow inherently incompatible with the nature of actions under § 1983.

For similar reasons, *Brown* v. *Western R. Co. of Alabama*, 338 U. S. 294 (1949), which is repeatedly quoted by the majority, does not control the present case. In *Brown*, which

arose under the Federal Employers' Liability Act (FELA), this Court refused to accept a state court's interpretation of allegations in a complaint asserting a federal statutory right. Concluding that the state court's interpretation of the complaint operated to "detract from 'substantive rights' granted by Congress in FELA cases," the Court "simply h[e]ld that under the facts alleged it was error to dismiss the complaint and that [the claimant] should be allowed to try his case." *Id.*, at 296, 299 (citations omitted). See also *Garrett* v. *Moore-McCormack Co.*, 317 U. S. 239, 249 (1942) ("Deeply rooted in admiralty as that right [to a certain presumption] is, it was a part of the very substance of [the plaintiff's] claim and cannot be considered a mere incident of a form of procedure") (citations omitted). In the case before us today, by contrast, the statute at issue does not diminish or alter any substantive right cognizable under § 1983. As the majority concedes, the Wisconsin courts "will hear the entire § 1983 cause of action once a plaintiff complies with the notice-of-claim statute." *Ante*, at 145.

Unable to find support for its position in § 1983 itself, or in its legislative history, the majority suggests that the Wisconsin statute somehow "discriminates against the federal right." *Ante*, at 141. The Wisconsin statute, however, applies to all actions against municipal defendants, whether brought under state or federal law. The majority is therefore compelled to adopt a new theory of discrimination, under which the challenged statute is said to "conditio[n] the right to bring suit against the very persons and entities [viz., local governments and officials] Congress intended to subject to liability." *Ante*, at 144–145. This theory, however, is untenable. First, the statute erects no barrier at all to a plaintiff's right to bring a § 1983 suit against anyone. Every plaintiff has the option of proceeding in federal court, and the Wisconsin statute has not the slightest effect on that right. Second, if a plaintiff chooses to proceed in the Wisconsin state courts, those courts stand ready to hear the entire fed-

eral cause of action, as the majority concedes. See *ante*, at 145. Thus, the Wisconsin statute "discriminates" only against a right that Congress has never created: the right of a plaintiff to have the benefit of selected federal court procedures after the plaintiff has rejected the federal forum and chosen a state forum instead. The majority's "discrimination" theory is just another version of its unsupported conclusion that Congress intended to force the state courts to adopt procedural rules from the federal courts.

The Court also suggests that there is some parallel between this case and cases that are tried in federal court under the doctrine of *Erie R. Co.* v. *Tompkins*, 304 U. S. 64 (1938). Quoting the "outcome-determinative" test of *Guaranty Trust Co.* v. *York*, 326 U. S. 99, 109 (1945), the Court opines today that state courts hearing federal suits are obliged to mirror federal procedures to the same extent that federal courts are obliged to mirror state procedures in diversity suits. This suggestion seems to be based on a sort of upside-down theory of federalism, which the Court attributes to Congress on the basis of no evidence at all. Nor are the implications of this "reverse-*Erie*" theory quite clear. If the Court means the theory to be taken seriously, it should follow that defendants, as well as plaintiffs, are entitled to the benefit of all federal court procedural rules that are "outcome determinative." If, however, the Court means to create a rule that benefits only plaintiffs, then the discussion of *Erie* principles is simply an unsuccessful effort to find some analogy, no matter how attenuated, to today's unprecedented holding.

"Borrowing" cases under 42 U. S. C. § 1988, which the Court cites several times, have little more to do with today's decision than does *Erie*. Under that statute and those cases, we are sometimes called upon to fill in gaps in federal law by choosing a state procedural rule for application in § 1983 actions brought in federal court. See, *e. g., Wilson* v. *Garcia*, 471 U. S. 261 (1985); *Burnett* v. *Grattan*, 468 U. S. 42 (1984). The congressionally imposed necessity of *supple-*

*menting* federal law with state procedural rules might well caution us against *supplanting* state procedural rules with federal gaps, but it certainly offers no support for what the Court does today.

Finally, JUSTICE WHITE's concurrence argues that Wisconsin's notice of claim statute is in the nature of a statute of limitations, and that the principles articulated in *Wilson* v. *Garcia, supra,* preclude its application to any action under § 1983. See *ante,* at 154–156. Assuming, *arguendo,* that state courts must apply the same statutes of limitations that federal courts borrow under § 1988, the concurrence is mistaken in treating this notice of claim requirement as a statute of limitations. As the concurrence acknowledges, the 120-day claim period established by the Wisconsin statute does not apply if the local government had actual notice of the claim and has not been prejudiced by the plaintiff's delay. *Ante,* at 155, n. 3. The concurrence suggests that the Wisconsin statute nonetheless is equivalent to a statute of limitations because the present case demonstrates that "the 'actual notice' requirement is difficult to satisfy." *Ibid.* I agree that a sufficiently burdensome notice of claim requirement could effectively act as a statute of limitations. The facts of this case, however, will not support such a characterization of the Wisconsin law. The court below said that no "detailed claim for damages" need be submitted; rather, the injured party need only "recit[e] the facts giving rise to the injury and [indicate] an intent . . . to hold the city responsible for any damages resulting from the injury." 139 Wis. 2d 614, 630, 408 N. W. 2d 19, 26 (1987) (citations omitted). It has not been suggested that petitioner tried to comply with this requirement but encountered difficulties in doing so. Indeed, it would have been easier to file the required notice of claim than to file this lawsuit, which petitioner proved himself quite capable of doing. Far from encountering "difficulties" in complying with the notice of claim statute, petitioner never tried.

As I noted at the outset, the majority correctly characterizes the issue before us as one of statutory pre-emption. In order to arrive at the result it has chosen, however, the Court is forced to search for "inconsistencies" between Wisconsin's notice of claim statute and some ill-defined federal policy that Congress has never articulated, implied, or suggested, let alone enacted. Nor is there any difficulty in explaining the absence of congressional attention to the problem that the Court wrongly imagines it is solving. A plaintiff who chooses to bring a § 1983 action in state court necessarily rejects the federal courts that Congress has provided. Virtually the only conceivable reason for doing so is to benefit from procedural advantages available exclusively in state court. Having voted with their feet for state procedural systems, such plaintiffs would hardly be in a position to ask Congress for a new type of forum that combines the advantages that Congress gave them in the federal system with those that Congress did *not* give them, and which are only available in state courts. Fortunately for these plaintiffs, however, Congress need not be consulted. The concept of statutory pre-emption takes on new meaning today, and it is one from which I respectfully dissent.