**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

VIET MIKE NGO,
          *Plaintiff-Appellant,*

v.

J. S. WOODFORD, Warden; A. P.
KANE, Chief Deputy,
          *Defendants-Appellees.*

No. 03-16042

D.C. No.
CV-01-20674-JF

OPINION

Appeal from the United States District Court
for the Northern District of California
Jeremy Fogel, District Judge, Presiding

Argued and Submitted
May 22, 2007—Pasadena, California

Filed August 21, 2008

Before: Alex Kozinski, Chief Judge, Harry Pregerson and
Jay S. Bybee,* Circuit Judges.

Opinion by Chief Judge Kozinski;
Concurrence by Judge Pregerson

---

*Circuit Judge Bybee was drawn to replace Senior District Judge John
S. Rhoades, Sr., who died after this case was submitted.

11355

**COUNSEL**

Meir Feder, Kate Bushman and Sari H. Schneider, Jones Day, New York, New York, for the plaintiff-appellant.

Kenneth Roost, Deputy Attorney General; Bill Lockyer, Attorney General of the State of California; James M. Humes, Chief Assistant Attorney General; Frances T. Grunder, Senior Assistant Attorney General; Barbara C. Spiegel, Supervising Deputy Attorney General, San Francisco, California, for the defendants-appellees.

## OPINION

KOZINSKI, Chief Judge:

On remand from the Supreme Court, *Woodford* v. *Ngo*, 126 S. Ct. 2378 (2006), we consider whether a prisoner exhausted his administrative remedies for purposes of the Prison Litigation Reform Act (PLRA).

### Facts

Ngo, a prison inmate serving a life sentence, was placed in administrative segregation on October 26, 2000, for inappropriate activity with a prison church volunteer. At a December 22, 2000, hearing, the prison classification committee informed Ngo that he would be released from administrative segregation the next day, but that he could not participate in prison "special programs." Three months later, on March 20, 2001, Ngo wrote to Deputy Warden Kane, asking whether he could play on the prison's baseball team and whether he was "entitled to participate in any and all special programs." Kane explained that Ngo could participate in "any recreational programs," and that the prison's community resources manager was authorized "to review [Ngo's] request to participate in any other program." On June 18, 2001, Ngo submitted a formal appeal to the prison's Appeals Coordinator. This appeal was denied as untimely under Cal. Code Regs. tit. 15, § 3084.6(c), which requires prisoners to "appeal within 15 working days of the event or decision being appealed." Ngo resubmitted his appeal one week later, arguing that his exclusion from special programs was a continuing violation of his constitutional rights. The next day the appeal was again rejected as untimely.

Ngo sued in federal district court under 42 U.S.C. § 1983, alleging First Amendment and due process violations. The district court dismissed for failure to exhaust administrative remedies. We reversed, holding that Ngo was not required to

exhaust administrative remedies. *Ngo* v. *Woodford*, 403 F.3d 620, 626 (9th Cir. 2005). The Supreme Court then reversed us, explaining that the PLRA requires "proper exhaustion of administrative remedies," *Woodford* v. *Ngo*, 126 S. Ct. at 2382, so "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court," *id.* at 2384. We now consider whether Ngo exhausted his administrative remedies.

## Analysis

**[1] 1.** It was the December 22, 2000, order that barred Ngo from participating in prison special programs. Pursuant to Cal. Code Regs. tit. 15, § 3084.6(c), Ngo was required to appeal within 15 working days of that order, or about January 16, 2001. Ngo didn't appeal until June 18, 2001, long after the limitations period expired.

**[2]** Ngo argues that the December 22 determination resulted in a continuing denial of his constitutional rights, so the 15-day limitations period restarts each day he is unable to participate in prison special programs. We rejected this argument in *Knox* v. *Davis*, 260 F.3d 1009 (9th Cir. 2001). *Knox* held that a limitations period began running on the date of a prison board's initial determination, when a prisoner "had notice of all of the wrongful acts she wished to challenge at the time of the [initial determination]." *Id.* at 1014. Rejecting a continuing violation theory, we explained that any continuing effects are "nothing more than the delayed, but inevitable, consequence of the [initial determination]." *Id.* And in the context of employment discrimination, the Supreme Court recently emphasized that limitations periods begin to run when the "discrete act" adverse to the plaintiff occurs—"not from the date when the effects of [that act] were felt." *Ledbetter* v. *Goodyear Tire & Rubber Co.*, 127 S. Ct. 2162, 2168 (2007). Here, the December 22 determination is the discrete act adverse to Ngo, so the 15-working-day limitations period

began running against him on that date rather than on the date he actually felt the effects of the order.

**[3]** Ngo had ample notice: At the December 22 hearing, he was informed that he would be barred from all special programs after being released from administrative segregation. This restriction was presumptively permanent. If a warden bars a prisoner from activities and doesn't set a date when this restriction will lapse, the restriction remains in force until the prisoner is transferred or the warden reconsiders. Here, neither Deputy Warden Kane nor the prison classification committee told Ngo that the restriction was temporary. Indeed, Ngo's March 20, 2001, letter recognized that the restriction was still in effect when he asked for permission to play on the prison's baseball team and participate in special programs. Deputy Warden Kane partially rescinded the restriction and allowed Ngo to participate in recreational activities, but this doesn't change the fact that Ngo had notice on December 22 that he was subject to an indefinite restriction. If Ngo wanted to challenge this restriction, he needed to appeal within 15 working days of the date he learned of it. Cal. Code Regs. tit. 15, § 3084.6(c). Having failed to do so, Ngo has not exhausted his administrative remedies and so cannot sue in federal court. *See Woodford* v. *Ngo*, 126 S. Ct. at 2384.

**[4] 2.** Ngo argues that 15 working days does not give him a "meaningful opportunity," *id.* at 2392, to exhaust. *But see id.* at 2393 (recognizing "the informality and relative simplicity of prison grievance systems like California's"). We need not determine whether California's 15-working-day limitations period for prisoner administrative appeals amounts to a meaningful opportunity to exhaust, because Ngo waited months after that period elapsed to challenge the restriction. Even if we were to double or triple the 15-day period, Ngo would still come nowhere close to meeting the deadline. Ngo didn't even question the restriction until three months after it was imposed, and didn't formally appeal it until five months after the limitations period had elapsed. And Ngo had every

opportunity to appeal earlier because he knew the restriction's scope and duration as soon as the prison classification committee imposed it. *See* pp.11359-60 *supra*. This is therefore not a case where the plaintiff lacked a meaningful opportunity to exhaust on the grounds that he "fail[ed] to appreciate the . . . nature of [his] injuries." *Felder* v. *Casey*, 487 U.S. 131, 146 (1988). Ngo sat on his grievance for months, so it is irrelevant here whether California's 15-working-day limitations period provides a meaningful opportunity to exhaust.

**[5] 3.** It is unclear whether we can read exceptions into the PLRA's exhaustion requirement. *Compare Woodford* v. *Ngo*, 126 S. Ct. at 2393 (Breyer, J., concurring in the judgment), *with Booth* v. *Churner*, 532 U.S. 731, 741 n.6 (2001). Even if we could, no such exception applies here. Ngo hasn't shown that administrative procedures were unavailable, that prison officials obstructed his attempt to exhaust or that he was prevented from exhausting because procedures for processing grievances weren't followed. Ngo argues that prison officials didn't follow procedures and misled him. However, the acts he complains about took place only *after* Ngo sent his March 20, 2001, letter to Deputy Warden Kane. As a result, they could have no effect on Ngo's ability to exhaust, as he had already missed the deadline.

**AFFIRMED.**

---

PREGERSON, Circuit Judge, concurring:

I concur in the majority's determination that Ngo did not exhaust his administrative remedies because Ngo did not challenge the decision by prison authorities until three months after the decision was made. I write separately, however, to note my serious concerns about the constitutionality of California's prisoner grievance process. As Justice Stevens noted in his dissent, the Supreme Court's majority opinion in this

case "le[ft] open the question whether a prisoner's failure to comply properly with procedural requirements that do not provide a 'meaningful opportunity for prisoners to raise meritorious grievances' would bar the later filing of a suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 120 (2006) (Stevens, J., dissenting). It is not clear to me that California's system provides a meaningful opportunity for prisoners to raise meritorious grievances.

In particular, I write to address two problems with the grievance process: (1) the requirement that appeals must be filed within fifteen days; and (2) the lack of clarity about how appeals should be filed.

**1.**

The statute of limitations for § 1983 claims in California is two years. *Ngo v. Woodford*, 403 F.3d 620, 630 n.4 (9th Cir. 2005). California regulations, however, require an inmate to appeal a decision made by prison authorities "within 15 working days of the event or decision being appealed." Cal. Code Regs. tit. 15, § 3084.6(c). There does not appear to be any justification for such a short filing deadline. The Supreme Court has noted that shortened timelines for filing prisoner suits may be appropriate for instances of urgency. *See McCarthy v. Madigan*, 503 U.S. 140, 152 (1992). However, there does not appear any urgency or exigency justifying such draconian timetables for filing prisoners' § 1983 claims.

While a fifteen day statute of limitations would be extremely short under any circumstances, it is especially problematic in the prison context. One issue with such a short timeline is the informal nature of the prison discipline process. In this case, for example, Ngo never received a written explanation of the restrictions imposed on him. In such a situation, fifteen days could pass before a prisoner is able to clarify the scope of the sanction against him.[1] This fifteen day

---

[1] In this case, for example, the duration of the restriction against Ngo was not clear. If Ngo had attempted to clarify the restriction, it could easily have consumed a significant portion of the fifteen days.

timeline might also prove insufficient where a decision made by prison authorities does not even affect the prisoner in the first fifteen days. Further, even if prisoners are aware of the scope of the sanction against them, it may take more than fifteen days to formulate a grievance. If a prisoner researches his rights before filing the grievance, the short time frame might not allow for enough time in the prison library. Prison officials, meanwhile, have significant incentive to find that claims are procedurally barred, given the large number of prisoner grievances.

In sum, it is difficult to see how due process would allow such a draconian timeline to prevent a prisoner from vindicating important constitutional rights.

**2.**

The rule that prisoners must properly exhaust their administrative remedies also raises difficult questions about what constitutes compliance with the confusing California prisoner grievance system. I do not believe that California regulations adequately inform prisoners of the required process. The regulations explain that prisoners are to complete a Form 602 when making a grievance. Cal. Code Regs. tit. 15 § 3084.2(a). The regulations also indicate, though, that there is an *informal* attempt prerequisite. *Id.* § 3084.2(b). Section 3084.5(a), explains that "[t]he informal level is that at which the appellant and staff involved in the action or decision attempt to resolve the grievance informally." Read together, these code subsections indicate that the informal process does not involve the filing of a Form 602, especially given that filing forms with prison officials is not logically an "informal" process.[2] Other code sections, however, belie the assumption that

---

[2]The summary of the process used by many California district courts appears to assume that the informal stage does not require a Form 602. *See, e.g.*, *Cockcroft v. Kirkland*, ___ F. Supp. 2d ___, 2008 WL 683446 (N.D.Cal. 2008) (citing *Barry v. Ratelle*, 985 F.Supp. 1235, 1237 (S.D.Cal.1997)) (describing the four levels of appeal as "(1) informal resolution, (2) formal written appeal on a CDC 602 inmate appeal form, (3) second level appeal to the institution head or designee, and (4) third level appeal to the Director of the California Department of Corrections.").

a Form 602 is not necessary for an informal appeal. For example § 3084.5(a)(2) explains that when a petitioner attempts to obtain review at the informal level, the prison employee involved "shall review and if practical resolve the grievance. The employee shall report the action taken in the response space provided on the appeal form, and shall sign and date the form." This implies that Form 602 *is* part of the informal review process.

Given these contradictory provisions, a prisoner could hardly know from the regulations whether a Form 602 is required for an informal appeal. It is also not clear whether the prisoner has exhausted his administrative remedies by filing an informal appeal in cases where the informal step *could* be waived under the regulations. The regulations provide that the informal level of appeal is waived for certain types of appeals, including classification committee actions. Cal. Code Regs tit. 15 § 3084.5(a)(3)(A). Here, Ngo could have bypassed the informal appeal stage because he was challenging a classification committee action, but he chose to first approach the warden in an informal capacity. The regulations offer no clarity as to whether, in such circumstances, a prisoner is required, or simply allowed, to skip the informal appeal step.

Given the Supreme Court's directive that prisoners must properly exhaust state administrative remedies, the lack of clarity in the California regulations is troublesome. The constitutional rights of prisoners should not be taken away based on a confusing administrative process with such a short timeline.