# IN THE COURT OF APPEALS

## OF THE

## STATE OF MISSISSIPPI

### NO. 2000-CA-00258-COA

**EAST MISSISSIPPI STATE HOSPITAL, THE MISSISSIPPI DEPARTMENT OF MENTAL HEALTH, DR. RAMIRO J. MARTINEZ AND ROGER MCMURTRY**       **APPELLANTS**

**v.**

**JIMMY B. CALLENS**       **APPELLEE**

| | |
|---|---|
| DATE OF TRIAL COURT JUDGMENT: | 10/26/1999 |
| TRIAL JUDGE: | HON. L. BRELAND HILBURN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LAWRENCE ARTHUR SCHEMMEL |
| ATTORNEYS FOR APPELLEE: | MARY MARVEL FYKE |
| | BO ROLAND |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| TRIAL COURT DISPOSITION: | PLAINTIFF IS AWARDED A JUDGMENT IN THE AMOUNT OF $289,569.14. |
| DISPOSITION: | REVERSED AND RENDERED - 12/18/2001 |
| MOTION FOR REHEARING FILED: | 1/15/2002; denied 3/26/2002 |
| CERTIORARI FILED: | 4/8/2002; granted 6/13/2002 |
| MANDATE ISSUED: | |

EN BANC.

McMILLIN, C.J., FOR THE COURT:

¶1. This case involves a claim of wrongful termination from state employment asserted by Jimmy B. Callens. Callens received judgment in the Circuit Court of Hinds County in the aggregate amount of $289,569.14. The suit was brought against four separate defendants. They were the Mississippi State Department of Mental Health, the East Mississippi State Hospital, Dr. Ramiro J. Martinez and Roger McMurtry. Dr. Martinez and Mr. McMurtry were named as individual defendants on the basis that, in their roles as state officials, they exercised some discretionary authority in the decision to terminate Callens. The appellants have collectively appealed from that judgment, raising a number of issues including a claim that Callens was procedurally barred from maintaining the suit because of his failure to follow the statutorily-prescribed grievance procedures for state employees. We find this issue to have merit, the effect of which is to render

the appellants' remaining issues moot. We, therefore, reverse and render judgment in favor of the appellees. This decision also renders moot Callens's cross-appeal in which he complained of the trial court's decision not to submit the issue of punitive damages to the jury.

## I.

### Facts

¶2. Jimmy B. Callens was terminated from his state position as Program Director for the Adolescent Unit of the East Mississippi State Hospital prior to the end of his one-year probationary period. Callens, believing his termination to be unjustified, pursued his grievance through procedures set out in the Mississippi State Employee Handbook but was unsuccessful in obtaining any relief from the employing agency, the Mississippi State Department of Mental Health. His contention was that he was terminated for his efforts to correct, or at least expose, improper treatment of some of the patients by the hospital staff.

¶3. Callens perfected an appeal of his termination to the Employee Appeals Board, an arm of the State Personnel Board charged by statute with conducting de novo inquiries into adverse personnel actions when requested to do so by the affected state employee. Callens's appeal was dismissed by the hearing officer designated to conduct the hearing on motion of the employing agency. The agency's motion sought dismissal on the ground that Callens was a probationary employee who could be discharged at will, with or without cause, and thus was without any basis in fact to appeal his dismissal. The hearing officer dismissed the appeal for lack of jurisdiction, finding that under the Appeals Board rules, the only grounds on which a probationary employee could appeal his dismissal, were claims for various forms of discrimination that did not extend to First Amendment free speech claims. Callens did not appeal that decision to the full Employee Appeals Board. By his failure to do so, he likewise forfeited any right under the applicable statute to seek further review of that decision by way of an appeal to the judicial branch as authorized by Mississippi Code Annotated Section 25-9-132 (Rev. 1999).

¶4. Instead, one year later, Callens filed this original action in the Circuit Court of the First Judicial District of Hinds County in which he asserted a claim for damages advancing two alternate theories of liability. The first was that his termination was due to the exercise of his First Amendment right to speak out on matters of public concern, such a claim being actionable under 42 U.S.C. § 1983 (1994). Alternatively, Callens asserted that his firing was in retaliation for his reporting improper operations at East Mississippi State Hospital, thus making his termination actionable under Mississippi common law as an exception to the employee-at-will doctrine first recognized in *McArn v. Allied Bruce-Terminix Co.,* 626 So. 2d 603, 607 (Miss. 1993).

¶5. The case proceeded to trial and the jury was instructed to deliberate Callens's claims under 42 U.S.C. § 1983 (1994). The jury returned a verdict in favor of Callens in the amount of $125,000. The trial court, concluding that Callens's separate claim under *McArn* was cognizable under the Mississippi Tort Claims Act, proceeded to determine that claim separately from the bench and awarded Callens an additional $50,000 in damages. Callens filed a post-verdict motion for attorney's fees and court expenses. The trial court granted such fees in the amount of $114,569.14.

## II.

### Circuit Court Jurisdiction of Callens's Claim as an Original Action

¶6. The appellants collectively assert that the circuit court lacked jurisdiction to entertain this independent action by a state employee pursuing federal and state common law remedies. Rather, they contend that Callens's exclusive remedy was to pursue his employment grievances through the statutory processes set out in sections 25-9-101 through 25-9-155 of the Mississippi Code, which include a de novo hearing before the Employee Appeals Board followed by an appeal to the circuit court. The appellants rely for that proposition on the case of *Hood v. Miss. Dep't of Wildlife Conservation,* 571 So. 2d 263 (Miss. 1990). In that case, a former state employee filed an independent action seeking various forms of relief based on a claim that his termination from employment was improper. Though Hood did not reference his claim to a particular statute in his complaint, the supreme court determined that his theory of recovery had "invoked 42 U.S.C. § 1983." *Id.* at 266. The employee had previously pursued a grievance through the administrative procedures referenced above but had abandoned that process after an unfavorable ruling from the Employee Appeals Board. *Id.* at 268. The Mississippi Supreme Court examined the administrative grievance procedure for state employees and found it to be entirely adequate to address "every claim Hood asserts in the present complaint, *including the grounds for his Section 1983 claims.*"*Id.* (emphasis added). On that basis, the court specifically found the administrative procedure, which culminates in a right to judicial review at the circuit court level and further right of appeal to the supreme court, to be "the employee's exclusive remedy" for the redress of those grievances. *Id.*

¶7. The appellants point out that Callens voluntarily abandoned his rights under the administrative process when he acceded to the hearing officer's determination that the Appeals Board lacked jurisdiction of his claim without testing the validity of that determination through an appeal to the full Board and, to the extent necessary, a further review by the judiciary.

¶8. Callens responds to this claim by stating that, at the time of his termination, he remained a probationary employee and that, under the terms of State Personnel Board regulations existing at the time, the Employee Appeals Board had only the most limited authority over employment grievances asserted by probationary employees and that this limited authority did not extend to claims under 42 U.S.C. § 1983 (1994). Specifically, Callens points out that the Mississippi State Employee Handbook as constituted at the time of his termination provided that "a probationary employee may only appeal an agency decision through the employee appeals board on the basis of alleged acts of discrimination or violation of rules governing political activity . . . ." Mississippi State Employee Handbook, Section 3, page 9 (Feb. 1994) (version no longer available, current version found at http://msonline.state.ms.us/SPB/EMP_HDB/Spbhb.pdf). He contends that, since the specific issue on which he complains is on federal constitutional grounds - termination from employment based on the exercise of his First Amendment right of free speech unrelated to political activity - and is not listed as a grievable matter in the Handbook, he had no available administrative remedy and could not, on that basis, be precluded by the *Hood* decision from bringing this independent action.

¶9. Alternatively, Callens argues that, since the appellants took a contrary position in the administrative proceeding regarding the availability of administrative relief for Callens, they should be judicially estopped in this proceeding from advancing the proposition that the administrative proceeding was his sole means of seeking relief.

¶10. We will address these issues separately.

**A.**

**Lack of an Administrative Remedy**

¶11. The statutes creating the scheme governing state service employees unquestionably draws a distinction in terms of rights between permanent and probationary employees. Under section 25-9-127(1), the Legislature mandated that "[n]o employee . . . included under this chapter . . . who is subject to the rules and regulations prescribed by the state personnel system may be dismissed . . . except for inefficiency or other good cause . . . ." Miss. Code Ann. § 25-9-127(1) (Rev. 1999). However, later in that same section those protections from discharge are made unavailable to those employees who are in the first twelve months of state service. Miss. Code Ann. § 25-9-127(1)(b) (Rev. 1999).

¶12. The effect of that latter provision is to place probationary employees into the category long recognized in Mississippi case law as employees at will - employees who, as the familiar recitation goes, may be terminated at any time for good reasons, for bad reasons, or for no reason (the "no reason" provision apparently meaning simply that the employing entity cannot be compelled to articulate a reason for the termination since, in a cause and effect world, nothing happens for no reason). *See Mississippi Employment Security Commission v. Philadelphia Municipal Separate School District*, 437 So. 2d 388, 397 (Miss.1983); *Kelly v. Mississippi Valley Gas Co.*, 397 So. 2d 874, 875 (Miss.1981); *Brown v. Inter-City Federal Bank for Sav.*, 738 So. 2d 262, 264 (¶ 6) (Miss. Ct. App. 1999).

¶13. However, even at-will public employees are afforded certain protections under federal law in the enjoyment of the benefits of their employment status. Thus, though a public employee may generally be summarily terminated without redress for bad reasons - at least in the sense that a reasonable person might find the reasons offensive or even fundamentally unfair - federal case law arising under claims brought pursuant to the enabling provisions of 42 U.S.C. § 1983 (1994) has established that a public employee terminated in retaliation for speaking out on matters of public interest may obtain appropriate redress in a civil action. *Connick v. Myers*, 461 U.S. 138, 148 (1983). Callens contends that he was wrongfully terminated, not because of any failings in the manner he performed his duties, but rather in retaliation for his speaking out on what he perceived to be abuses by other members of the staff in the treatment of hospital patients. Such a contention clearly sets out a federally-anchored cause of action that Callens was free to pursue under the enabling provisions of Section 1983.

¶14. An individual believing himself possessed of a valid claim for infringement on the exercise of the rights guaranteed him by the United States Constitution and assertable under 42 U.S.C. § 1983 (1994) has a choice of venues, since the law permits such an action to be brought in either the state or federal forum. *See Martinez v. California*, 444 U.S. 277, 283 n.7 (1980). The election to proceed in either the state or federal forum is one the prospective plaintiff is free to make once the cause has arisen. In this case, Callens indicated his election to proceed on his claims in the state forum by filing, but then dismissing, an action in the federal district court. Thus, our further consideration of whether Callens is procedurally barred from pursuing this separate action because of his voluntary abandonment of his Employee Appeals Board proceeding does not purport to speak to the question of whether Callens could have maintained a similar action in federal court.

¶15. Having unequivocally elected to pursue his federal remedies in a state forum, Callens must follow the procedural rules of that forum in pursuing his claim. The United States Supreme Court has, in the same paragraph, called that proposition "unassailable" yet proceeded to narrow its impact to the extent that it warned that "forms of local practice" cannot be used to defeat a federal right. *Felder v. Casey,* 487 U.S.

131, 138 (1988). Some two years after the United States Supreme Court handed down *Felder v. Casey,* the Mississippi Supreme Court decided *Hood v. Miss. Dep't of Wildlife Conservation* and judicially decreed that, in Mississippi, the exclusive available procedure for a dismissed state employee covered under the Mississippi Statewide Personnel System to pursue a Section 1983 claim was before the Employee Appeals Board and from there to the circuit court by way of an appeal authorized by section 25-9-131 of the Mississippi Code. *Hood,* 571 So. 2d at 268. Whether this procedure, commencing as an administrative matter before a body having the authority to consider constitutional claims such as the ones Callens asserts, but unable, at least at the administrative level, to provide the relief unequivocally made available under 42 U.S.C. § 1983 (1994), could escape a claim that it was a "form of local practice" having the real potential to unduly impede the prosecution of such a claim raises troubling questions. There are other issues that, at least facially, raise other troubling concerns regarding whether a proceeding under Mississippi Code § 25-9-131 provides a suitable vehicle to resolve constitutional claims arising under 42 U.S.C. § 1983 (1994) which will be discussed elsewhere in this opinion. Nevertheless, despite the gravity of any such concerns, at the end of our analysis, we are left with the proposition that the *Hood* case was decided after *Felder v. Casey*, and thus remains binding precedent on the decisions of this Court, sitting as an intermediate appellate court. *State v. Whitaker*, 481 N.W.2d 649, 655 (Wis. Ct. App. 1992).

¶16. As we have previously observed, Callens seeks to avoid application of the *Hood* decision to his case by drawing a distinction between Hood, as a permanent status state employee, and his situation as a probationary employee. Callens's reliance for this proposition rests principally on the provisions of the Handbook that, at the time, did not permit an appeal from dismissal by a probationary employee except for matters relating to various forms of discrimination having no applicability to Callens's free speech claims. However, the reach of authority of an entity such as the Employee Appeals Board is not determined solely by its internally-promulgated implementing regulations. Rather, its authority, as a legislatively-created entity, is determined by such limits as may be imposed by the legislation creating it and defining its duties and responsibilities. *Reserve Life Ins. Co. v. Coke*, 254 Miss. 936, 941, 183 So. 2d 490, 493 (1966). This proposition works in two directions: first to prevent a legislatively-created entity from exceeding its mandate, and second, to compel such an entity to carry out those responsibilities envisioned by the legislature. *See Wright v. White*, 693 So. 2d 898, 901-902 (Miss. 1997); *Mississippi Casino Operators Ass'n v. Mississippi Gaming Com'n*, 654 So.2d 892, 894 (Miss. 1995).

¶17. The determination of whether a particular duty falls within the legislatively decreed area of responsibility of an agency is often a question of law to be determined in a judicial setting. It was in that context that the Mississippi Supreme Court reviewed the enabling legislation for the state's personnel system in *Hood* and concluded that the grievance procedure before the Employee Appeals Board, with its accompanying right of further judicial review, was sufficiently broad as to constitute a state employee's exclusive remedy - at least in the state forum - to resolve his complaints. *Hood,* 571 So. 2d at 268. We observe that Mississippi Code Section 25-9-131(1), providing for hearings before the Appeals Board, affords that right to "[a]ny employee in the state service." Miss. Code Ann. § 25-9-131(1) (Rev. 1999). The statute does not purport to exclude probationary employees on a jurisdictional basis, and it has been recognized in other cases that probationary employees do have certain rights of appeal from their dismissal. *Mississippi Dep't of Human Services v. Baum***,** 730 So. 2d 58, 62 (¶13) (Miss. 1998).

¶18. Certainly, the earlier section of the legislation creating the statewide personnel system denied probationary employees the right to require that their dismissal be for "inefficiency or other good cause," but that matter simply limits those remedies available to a probationary employee and does not go to the

question of the underlying jurisdiction of the Employee Appeals Board to consider a complaint by a probationary employee. Miss. Code Ann. § 25-9-127(1) (Rev. 1999). The sole effect of section 25-9-127(1), as we have previously observed, is to put a probationary employee in the posture of being an employee at will.

¶19. The law seems quite clear that even an employee at will has certain protections from discharge, both under federal law and applicable state law. Under Mississippi law, an at-will employee may obtain redress for being terminated for (a) his refusal to participate in illegal activity or (b) reporting knowledge of such illegal activity by others at the workplace. *McArn,* 626 So. 2d at 607. And, of course, under federal law, all employees, whether permanent or probationary, are afforded protection from adverse employment actions under color of state law if that action violates certain specified rights arising under the United States Constitution. *Connick*, 461 U.S. at 148; *Bradford v. Everett*, 730 So. 2d 594, 597 (¶14) (Miss. Ct. App. 1999).

¶20. Because the Mississippi Supreme Court has conclusively held that the grievance procedure before the Employee Appeals Board is the exclusive remedy for a state employee to pursue a Section 1983 claim and because we find nothing in the applicable statutes that would remove the Board's jurisdiction to consider such a claim based solely on the employee's status as a probationary employee, we cannot agree that the Board lacked the necessary jurisdiction to consider Callens's Section 1983 grievances. (That the Board's purported limitation on its own authority to consider such a claim was an improper self-imposed restraint rather than a legitimate legislatively-created restriction is further evidenced by the fact that, without any amendment to the legislation creating the Board, its own regulations now permit it to consider a probationary employee's grievance based on any "reason specifically protected by law." Mississippi State Employee Handbook at Section 11, page 68, http://msonline.state.ms.us/SPB/EMP_HDB/Spbhb.pdf. (July 2001)).

## B.

### Judicial Estoppel

¶21. Citing authority for the notion that a party before the court may not assert a position contrary to that taken by the same party in an earlier proceeding (*See, e.g.,Banes v. Thompson*, 352 So. 2d 812, 815 (Miss. 1977)), Callens suggests that the appellants are judicially estopped from now claiming that the Employee Appeals Board was Callens's exclusive remedy. Callens points out that his appeal before the Board was dismissed on motion of his employing agency upon the hearing officer's determination that the Board lacked jurisdiction because of Callens's probationary status.

¶22. Though it is true that the hearing officer used terminology relating to jurisdiction to dismiss Callens's claim, we have reviewed the contents of the motion itself seeking dismissal and conclude that the employing agency was not seeking to attack the Board's jurisdiction to consider Callens's grievance. The agency simply took the position that Callens had no basis to assert a grievance. Rather than attack the Board's underlying authority to act as the arbiter of all complaints by state employees, no matter their status, the agency's motion was more in the nature of a motion to dismiss for failure to state a claim upon which relief could be granted - the equivalent of a Rule 12(b)(6) motion in a judicial proceeding. Thus, even though we have determined that the employing agency was incorrect in its assertion of the limited right of redress available to Callens, we do not find the agency's position as being a direct attack on the Appeals Board's jurisdiction to consider those grievances that might exist. Thus, case law relating to judicial estoppel is

inapplicable in this setting.

¶23. By acquiescing in the hearing officer's determination to dismiss for lack of jurisdiction to consider a Section 1983 claim rather than proceeding to test the correctness of that ruling through an appeal to the full Board and ultimately through the available judicial appellate process, Callens effectively abandoned his claim in the only state forum available to him. He could not subsequently revive that claim in an independent action originating in the circuit court after his time to appeal the hearing officer's adverse decision ended. *Wright*, 693 So. 2d at 904. (Though the Court has been cited to a number of cases relating to the applicability or inapplicability of the requirement to exhaust available administrative remedies before filing suit, it must be noted that this is not an "exhaustion of administrative remedies" case. In this instance, under *Hood*, the exhaustion of the administrative process that culminates with judicial review is not a prerequisite to a subsequently filed judicial remedy. The process is, instead, the *only* process available in the state forum to a state employee seeking relief from termination, whether under state law or under rights arising under the United States Constitution made actionable by 42 U.S.C. § 1983 (1994)).

## III.

### Procedural Aspects of Pursuing a Section 1983 Claim

¶24. We have previously commented in passing on the procedural difficulties seemingly raised by the *Hood* decision. While this intermediate appellate court finds itself bound by the precedent of *Hood* as reinforced by the Mississippi Supreme Court's decision in *Wright v. White*, 693 So. 2d 898, 901-902 (Miss. 1997), we do not think it inappropriate to point out those difficulties in the event this case is reviewed further on writ of certiorari.

¶25. An employee grievance commenced under the state's personnel laws appears to involve only two opposing parties; namely, the aggrieved employee and that person's employing agency. Yet, the law is well established that a Section 1983 action cannot be maintained directly against the state or any agency of the state. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989); *Gulf Coast Research Lab. v. Amaraneni*, 722 So. 2d 530, 533 (¶11) (Miss 1998). Certainly, state officials acting under color of state law may be sued under Section 1983 if the suit is brought against them in their individual capacity. *Amaraneni*, 722 So. 2d at 533 (¶12). However, there is no clear direction given in *Hood* concerning at what point it is proper to bring in those individuals as parties to the proceeding.

¶26. The *Hood* decision further concedes in a footnote that, at least at the administrative level, those remedies available under Section 1983 to an aggrieved employee are beyond the authority of the Board to award. *Hood*, 571 So. 2d at 268 n.4. Federal case law has made it quite plain that those remedies afforded under federal law must be available even in those instances where the Section 1983 claim is pursued in a state forum. *Wright v. City of Roanoke Redevelopment and Hous. Auth.*, 479 U.S. 418, 427-428 (1987). The *Hood* decision suggests, in the course of its discussion, that once the proceeding reaches the judicial branch, an employee "may before the Circuit Court pursue all avenues of relief Section 1983 makes available." *Hood*, 571 So. 2d at 268. There is, nevertheless, no clear indication as to how the court is to proceed to consider such claims - apparently for the first time in the process - and whether the proceeding may be reopened for the addition of other parties and the receipt of additional evidence or whether these new issues must be decided on the basis of the record made before the Appeals Board.

¶27. Thus, though it is not entirely clear how a proceeding that commences without the only parties against

whom relief can be granted and before a forum without the authority to award the federally-mandated relief can, at some appropriate stage, transform itself into a full-blown Section 1983 proceeding, the fact remains that the precedents that bind this Court dictate this as Callens's sole path to relief. We can only comment that, though Callens's "avenues" to pursue his Section 1983 remedies may not have been spelled out in substantial detail, nevertheless, it was his obligation under the law as it now stands to follow that course, uncertain as it may have seemed. Had he persisted in that process, perhaps even taking a few wrong turns along the way, the possibility continued to exist that he could ultimately have discovered those avenues leading him to the proper resolution on the merits of his Section 1983 grievances. Where that course might have led Callens had he persevered cannot now be answered. In the context of this case under existing case law, the question has effectively been rendered moot by Callens's own decision to accept, without further testing in forums available to him in the appellate process, the hearing officer's plainly-incorrect determination that the Appeals Board lacked jurisdiction to consider his Section 1983 claims. For that reason, we conclude that, once Callens exercised his own unfettered option to pursue Section 1983 relief in a state forum rather than in federal court, he was bound to pursue the claim under the procedural rules as defined by existing Mississippi Supreme Court case law and that, under those precedents, the circuit court was without jurisdiction to entertain this original action seeking to redress those grievances set out in Callens's complaint.

## IV.

### State Tort Claim

¶28. For essentially the same reasons advanced concerning Callens's federally-based claim, the trial court's decision from the bench to award Callens an additional $50,000 in damages must fail. If the procedure starting before the Appeals Board followed by appeal to the circuit court is the exclusive remedy for pursuing a Section 1983 grievance, then there can be little doubt that it also serves as the exclusive remedy to pursue a *McArn* claim arising under state law.

¶29. **THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS REVERSED AND RENDERED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.**

> **SOUTHWICK, P.J., THOMAS, IRVING, AND BRANTLEY, JJ., CONCUR. IRVING, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY KING AND SOUTHWICK, P.JJ., AND THOMAS, J. CHANDLER, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BRIDGES, LEE, AND MYERS, JJ.**

> IRVING, J., CONCURRING:

¶30. My colleague writing for the majority as well as my colleague writing in dissent have written well and thoroughly. I find myself in agreement with what both have said except I cannot agree with the conclusion reached by my dissenting colleague.

¶31. I agree with the majority that *Hood v. Miss. Dept. of Wildlife Conservation,* 571 So. 2d 263 (Miss. 1990) compels the result reached by the majority. I also agree with the dissent that the Supremacy Clause of the United States Constitution and the federal preemption doctrine trumps any state procedure that does not afford a United States citizen the full protection of federal rights. The question then becomes whether this Court, as an intermediate court of appeals, has the authority to rule contrary to an established case

precedent of the Mississippi Supreme Court when it appears that the application of that precedent limits rights guaranteed by the United States Constitution and federal statutes, as determined by federal case precedent. At least two schools of thought exist on this issue. However, I will not, in this writing, discuss or share my views on either. I think it is sufficient that, by writ of certiorari, the Mississippi Supreme Court can address this problem and correct the prejudice, if any, suffered by Callens as a result of the procedural and substantive shortcomings inherent in having a 42 U.S. C. § 1983 claim heard by an administrative board such as the Employee Appeals Board.

¶32. For the reasons presented, I concur with the result reached by the majority.

**KING AND SOUTHWICK, P.JJ. AND THOMAS, J., JOIN THIS SEPARATE WRITTEN OPINION.**

CHANDLER, J., DISSENTING:

¶33. The majority holds that Callens was procedurally barred from maintaining this suit due to his failure to follow the administrative grievance procedure as established by statute for state employees. The majority bases this holding on the Mississippi Supreme Court case of *Hood v. Mississippi Dep't of Wildlife Conservation*, 571 So. 2d 263 (Miss. 1990). That case, later affirmed by *Wright v. White,* 693 So. 2d 898, 901 (Miss. 1997), holds that resort to the administrative process is the "exclusive remedy" for a state employee who wants to file suit for violation of his/her constitutional rights pursuant to 42 U.S.C. Section 1983 (1994). This line of case law finds that the Employee Appeals Board is competent to hear every claim asserted by a state employee, including a Section 1983 claim. *Hood*, 571 So. 2d at 268. If an employee fails to bring such a claim during the administrative process, he is barred from bringing the claim in a subsequent action filed in a state circuit court. *Id*.

¶34. The majority obviously has difficulties with the results of its own ruling; more than two and one-half pages of the majority opinion is dedicated to the problems that result from a line of law that holds an administrative process, without the authority to grant the relief required by federal law pursuant to a §1983 claim, is competent to hear such claims. Nonetheless, the majority finds *Hood* and *Wright* to be binding precedent upon this intermediate court and rules as it does. Because I believe that the majority has overlooked a very important and superior, for lack of a better term, line of precedent, namely the Supremacy Clause found in Article VI, Clause 2 of the United States Constitution, I dissent.

## LAW AND ANALYSIS

¶35. The Supremacy Clause provides, "the Laws of the United States . . . shall be the supreme Law of the Land . . . anything in the Constitution or Laws of any State to the contrary notwithstanding." U.S. Const. art VI, cl. 2. "Thus, since our decision in *M'Culloch v. Maryland*, 17 U.S. 316 (1819), it has been settled that state law that conflicts with federal law is without effect." *Cipollini v. Liggot Group Inc.,* 505 U.S. 504, 516 (1992).

¶36. The majority notes that *Hood* was decided two years after *Felder v. Casey*, 487 U.S. 131 (1988). Reference to this case is very applicable because the facts therein are very similar to those presented in the case *sub judice*. In *Felder*, the plaintiff filed a state court action against the City of Milwaukee and several city police officers under 42 U.S.C. § 1983, alleging violations of federal civil rights arising out of his arrest. *Id.* at 135. The plaintiff alleged that his arrest and alleged beating were racially motivated. *Id*. The

defendants filed a motion to dismiss and argued that the plaintiff was procedurally barred from maintaining the suit because he did not comply with the applicable state notice of claim statute. *Id.* at 135-36. The Wisconsin Supreme Court held that because the plaintiff chose to vindicate a congressionally created right in state court, he was bound to abide by the State's procedures. *Id*. at 137.

¶37. The United States Supreme Court reversed and held that because the Wisconsin notice statute conflicted in both purpose and effect with the remedial objectives of Section 1983 and because its enforcement in state actions would often result in different outcomes solely because the claim was asserted in a state rather than a federal court, the notice statute was pre-empted pursuant to the Supremacy Clause when a Section 1983 action was brought in state court. *Id*. at 138.

¶38. The *Felder* court further noted that Section 1983 was created to provide a unique federal remedy against violations of rights secured by the constitution and laws of this nation. *Id*. at 139; *Mitchum v. Foster*, 407 U.S. 225, 239 (1972). Therefore, any analysis of the applicability of a state law to a federal civil right, must be done in keeping with the "purpose and nature" of the federal right. *Felder*, 487 U.S. at 139. The majority states that *Felder* warned that "forms of local practice can not be used to defeat a federal right." However, the language of the court was much stronger than indicated by the majority. The court stated, "Congress . . . surely did not intend to assign to state courts and legislatures a conclusive role in the formative function of defining and characterizing the essential elements of a federal cause of action." *Id*. at 144; *Wilson v. Garcia*, 471 U.S. 261, 269 (1985). "States may no more condition the federal right to recover for violations of civil rights than bar that right altogether." *Felder*, 487 U.S. at 144. The court further noted that "[u]nder the Supremacy Clause of the Federal Constitution, 'the relative importance to the State of its own law is not material when there is a conflict with a valid federal law', for 'any state law, however clearly within a State's acknowledge power, which interferes with or is contrary to federal law, must yield.'" *Id*. at 138 (quoting *Free v. Bland*, 369 U.S. 663, 666 (1962)).

¶39. The *Felder* court decided that the notice of claim statute was preempted by federal law for three reasons: the statute discriminated against those who chose to vindicate their federal rights in state court rather than in federal court, the enforcement of such statutes in Section 1983 actions brought in state court would frequently yield different outcomes based solely on whether the plaintiff filed suit in state or federal court and the statute created an exhaustion requirement where none was intended by Congress. *Id*. at 141-42.

¶40. All three of these concerns are present in the case *sub judice*. In this case, the administrative requirement serves to discriminate not only against those who file in state rather than federal court, it discriminates between state employees and everyone else. By holding that state employees are bound to bring grievances pursuant to Section 1983 in an administrative process, the Mississippi Supreme Court places a burden on the vindication of violation of constitutional rights of state employees that is felt by no one else. As noted in *Felder*, this ruling extends the law's protection only to government defendants and conditions the right to bring suit against the very people and entities Congress intended to subject to liability. *Id*. at 144-45. The Court's concern relating to outcome differences is also implicated. Resort to the administrative process is only necessary if the plaintiff is a state employee and if that employee files suit in state court. Finally, notwithstanding the majority's statement that this case is not about exhaustion of administrative remedies, this process does impose an exhaustion requirement on state employees where none was intended by Congress. The court stated,

Given the evil at which the federal civil rights legislation was aimed, there is simply no reason to suppose that Congress meant "to provide these individuals immediate access to the federal courts notwithstanding any provision of state law to the contrary," yet contemplated that those who sought to vindicate their federal rights in state courts could be required to seek redress in the first instance from the very state officials whose hostility to those rights precipitated their injuries.

*Id*. at 147 (citation omitted) (quoting *Patsy v. Board of Regents of Florida*, 457 U.S. 496, 504 (1982)).

¶41. The majority also relied upon *Martinez v. State of California*, 444 U.S. 277, 283 n.7 (1980), to support its ruling. The note cited states that where Congress gives a penalty to an aggrieved party but does not specify a remedy for its enforcement, there is no reason why the penalty may not be enforced by a "proper action" in a state court. *Id.* I find note eight of that case to be very illuminating also.

Conduct by persons acting under color of state law which is wrongful under 42 U.S.C. §1983 cannot be immunized by state law. A construction of the federal statute which permitted a state immunity defense to have controlling effect would transmute a basic guarantee into an illusory promise; and the Supremacy Clause of the Constitution insures that the proper construction be enforced.

*Id.* at 283 n. 8.

¶42. Although the majority states that it is bound to rule as it does because of cited prior precedent, there is other state supreme court precedent which is applicable to the case at hand. In *Bolton v. City of Greenville*, 253 Miss. 656, 666, 178 So. 2d 667, 672 (1965), the court stated, "this Court is under authority of the United States Supreme Court. . . . the United States Supreme Court is still the ultimate in judicial determination and is binding on the tribunals and citizens of the respective states in comparable cases." *See also Columbus Paper and Chem. Inc., v. Chamberlin*, 687 So. 2d 1143, 1147 (Miss. 1996) ("[T]his Court when enforcing rights created under federal law, must follow the interpretations of those rights provided by federal courts.")

¶43. I respectfully submit that this case is one where the doctrine of federal preemption must be applied. Federal law preempts state law whenever: Congress has expressly preempted state law, Congress has created a comprehensive regulatory scheme in the area and effectively removed the entire field from the state realm, or where state action directly conflicts with the force or purpose of federal law. *Stucky v. City of San Antonio*, 260 F.3d 424, 431 (5th Cir. 2001).

¶44. In this instance, subjecting the vindication of violation of constitutional rights of state employees to an administrative process clearly conflicts with the force and purpose of federal law. The administrative process, as noted by the majority, is not capable of awarding the kinds of relief available pursuant to Section 1983. For instance, the Employee Appeals Board does not have the authority to provide for a jury trial, award attorneys fees or grant punitive damages. In order for a state court to exercise concurrent jurisdiction over a federal claim, it must provide full relief as provided by the applicable federal law. *Garret v. Moore-McCormack Co*, 317 U.S. 239, 245 (1942). The United States Supreme Court has held that a state administrative remedy is inadequate when there is doubt whether the agency has the authority to grant the required relief. *Gibson v. Berryhill*, 411 U.S. 564, 575 n.14 (1973) (citing *Union Pac. R. Co. v. Board of Comm'rs of Weld County*, 247 U.S. 282 (1918); *McNeese v. Board of Educ.*, 373 U.S. 668 (1963)).

¶45. For these reasons, I would hold that *Hood* and *Wright* are preempted by federal law and find that the Circuit Court of Hinds County properly exercised jurisdiction over Callens' claims for relief.

**BRIDGES, LEE AND MYERS, JJ., JOIN THIS SEPARATE WRITTEN OPINION.**