Filed 1/29/21  Romo v. Union Pacific Railroad Co. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RODNEY A. ROMO, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> UNION PACIFIC RAILROAD COMPANY, <br><br> Defendant and Respondent. | B304253 <br><br> (Los Angeles County Super. Ct. No. BC707679) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Elizabeth R. Feffer, Judge.  Affirmed.

Marc J. Bern & Partners, D. Shawn Burkley and James West for Plaintiff and Appellant.

Berkes Crane Robinson & Seal, Viiu Spangler Khare, Steven M. Crane, Barbara S. Hodous and Ryan T. Moore; Cozen O'Connor and Karl Riley, for Defendant and Respondent.

––––––––––

Plaintiff and appellant Rodney A. Romo (Romo) appeals a judgment entered in favor of defendant and respondent Union Pacific Railroad Company (Union Pacific) following the grant of a defense motion for summary judgment.

Romo contends the expert declaration in the moving papers lacked foundation and therefore was insufficient to shift the burden to him, the trial court abused its discretion in excluding his opposing expert declarations as untimely, and he is entitled to discretionary relief under Code of Civil Procedure section 473, subdivision (b) to cure any procedural defect in his opposing declarations.[1]

We reject Romo's contentions and affirm the judgment.

 **FACTUAL AND PROCEDURAL BACKGROUND**

1. *Pleadings.*

On May 24, 2018, Romo filed this action against Union Pacific. His complaint pled a single cause of action pursuant to the Federal Employers' Liability Act (45 U.S.C. § 51 et seq.) (FELA). Romo alleged that during his 17-year career with Union Pacific as a railroad trackman, he "was exposed to various toxic substances and carcinogens, including but not limited to diesel fuel/exhaust, benzene, creosote, and rock/mineral dust and fibers," and that his "exposure to the above referenced toxic

––––––––––

[1]     All statutory references are to the Code of Civil Procedure unless otherwise specified.

2

substances . . . caused or contributed to his development of esophageal cancer."

2. *Union Pacific's motion for summary judgment.*

On September 9, 2019, Union Pacific filed a motion for summary judgment. It asserted that Romo lacked any evidence, and could not "reasonably obtain any evidence, to establish that [his] claimed occupational exposures caused or contributed to his alleged disease," and that Romo therefore "cannot establish causation as a matter of law."

Union Pacific supported its summary judgment motion with the declaration and reports of its expert toxicologist, Paul Nony, Ph.D. Dr. Nony opined there was insufficient medical and scientific literature to support a nexus between Romo's disease, esophageal cancer, and his claimed exposure to diesel exhaust/fuel, benzene, creosote, rock dust/railroad ballast, penta oil, asbestos, manganese, green dirt from copper mines, rock/silica/mineral/coal/asbestos dust and fibers, and industrial solvents.

Dr. Nony added that the most likely causes of Romo's disease were his history of severe gastroesophageal reflux disease (GERD), smoking, and obesity.

3. *Romo's opposition to the motion for summary judgment.*

On October 9, 2019, fourteen days before the scheduled hearing date of October 23, 2019, Romo filed opposition to the motion for summary judgment.[2]

Romo's opposition was supported by the declaration of his attorney, Mark F. Didak (Didak). Attached to the Didak

---

[2] Section 437c, subdivision (b)(2) requires opposition papers to be served and filed not less than 14 days prior to the hearing on a motion for summary judgment.

declaration were the expert reports and curriculum vitae of Joseph Richard Landolph, Jr., Ph.D. (Dr. Landolph), Ernest P. Chiodo, M.D. (Dr. Chiodo), and Phillip A. Smith, Ph.D. (Dr. Smith). The experts' reports opined that the carcinogens to which Romo had been exposed during his railroad employment caused or significantly contributed to the development of his esophageal cancer.

Romo also filed a responsive separate statement of disputed and undisputed material facts, in which he cited his experts' reports on the issue of causation.

4. *Union Pacific's reply papers, including evidentiary objections to the expert reports attached to the Didak declaration.*

On October 18, 2019, five days before the date set for hearing, Union Pacific filed a reply memorandum, a reply to Romo's responsive separate statement, and evidentiary objections to attorney Didak's declaration.[3]

Union Pacific's evidentiary objections numbers 1 through 3 related to the three expert reports attached as exhibits to the Didak declaration. Union Pacific objected to these exhibits on the ground they were not executed under penalty of perjury pursuant to the laws of the state of California.

5. *October 18 and 21, 2019: Romo files untimely expert declarations.*

On October 18, 2019, the same day that Union Pacific filed its reply papers, Romo belatedly filed expert declarations by Drs. Landolph and Chiodo, and on October 21, 2019, Romo filed

---

[3]    Section 437c, subdivision (b)(4) requires the reply papers to be served and filed by the moving party not less than five days before the hearing date.

4

an expert declaration by Dr. Smith.[4]  Although the time for filing opposition papers had passed, Romo did not file a motion to be relieved of the obligation to timely file his opposition evidence 14 days prior to the date set for hearing.  (§ 437c, subd. (b)(2).)

6. *Union Pacific's objection to the late-filed declarations*.

On October 21, 2019, in response to Romo's three newly filed expert declarations, Union Pacific filed a supplement to its evidentiary objections.  Union Pacific asserted that the three expert declarations were inadmissible as untimely, in that section 437c, subdivision (b)(2) prohibited the filing of any opposition papers fewer than 14 days prior to the scheduled hearing.

Union Pacific further argued that Romo's counsel lacked good cause to file the belated expert declarations because Romo's counsel either knew or should have known of the requirement to file expert declarations in compliance with section 2015.5 [certification or declaration under penalty of perjury].  Union Pacific's papers stated:  "[I]t is clear that the reason [Romo's] counsel filed the instant declarations in this case, is because [Romo's] counsel recently lost a motion for summary judgment, based in part, upon [Romo's] counsel's failure to provide evidence in opposition that complied with Section 2015.5."  Specifically, on October 4, 2019, in *Eaton v. BNSF Railway Company* (*Eaton*), an action in the Contra Costa Superior Court, the defendant made the same objection at issue here, namely, that the expert report

---

[4]     The declarations of Drs. Landolph and Chiodo opined that Romo's occupational exposure caused or significantly contributed to his esophageal cancer, and the declaration of Dr. Smith opined that Union Pacific's actions did not meet a reasonable standard of care.

5

of Dr. Chiodo (the same expert) was improper because it failed to comply with section 2015.5. Thus, five days before Romo's counsel was required to file opposition to Union Pacific's motion for summary judgment in the instant case, Romo's counsel knew of the requirement to file expert declarations that complied with section 2015.5.

7. *The matter is transferred to another department of the superior court, and the hearing date is continued.*

On October 23, 2019, the date the summary judgment motion was scheduled to be heard, Department 3 of the superior court transferred the case to Department 39 (Hon. Elizabeth Feffer).

On October 31, 2019, the trial court conducted a trial setting and motion setting conference. The court continued the hearing on the summary judgment motion to November 19, 2019, and "note[d] that the motion for summary judgment is fully briefed."

8. *The court grants Union Pacific's motion for summary judgment.*

On November 19, 2019, the matter came on for hearing and the court granted Union Pacific's motion for summary judgment. The court overruled Romo's oral objection to the competence of Dr. Nony to render an opinion as to causation, and found that Dr. Nony's declaration was sufficient to shift the burden on summary judgment to Romo on the issue of causation.

The court sustained Union Pacific's evidentiary objections to the three expert reports that were attached to attorney Didak's declaration, as well as to the later-filed expert declarations. The court found that as a consequence of these evidentiary rulings, "[Romo] failed to submit admissible evidence to create a triable

6

issue of fact," and therefore Union Pacific was entitled to summary judgment.

Romo filed a timely notice of appeal from the judgment.

**CONTENTIONS**

Romo contends: (1) defense expert Dr. Nony is not a medical doctor and therefore was not qualified to opine on whether Romo's exposures to carcinogens were a cause of his esophageal cancer; (2) the trial court abused its discretion in excluding his expert declarations as untimely, and in doing so it failed to observe the legal principles and policies underlying FELA; and (3) discretionary relief under section 473, subdivision (b) is warranted because the only reason for excluding Romo's experts was the perceived lateness or inadequacy of his expert declarations.

**DISCUSSION**

1. *Trial court acted within its discretion in finding that Dr. Nony was qualified to render an opinion as to causation.*

a. *Governing principles and standard of review.*

Evidence Code section 720, subdivision (a), permits a person to testify as an expert "if he [or she] has special knowledge, skill, experience, training, or education sufficient to qualify him [or her] as an expert on the subject to which his [or her] testimony relates. Against the objection of a party, such special knowledge, skill, experience, training, or education must be shown before the witness may testify as an expert."

The trial court is the gatekeeper, having the power to decide whether to exclude or allow expert testimony (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 771–772 (*Sargon*)), and " 'is given considerable latitude in determining the [expert's] qualifications.' " (*People v.*

7

*Cooper* (1991) 53 Cal.3d 771, 813.)  The test applied on appeal is whether the trial court properly exercised its discretion, and whether the expert disclosed sufficient knowledge on the subject to warrant admission of the opinion into evidence. (*Redevelopment Agency v. First Christian Church* (1983) 140 Cal.App.3d 690, 703.)  "A ruling that constitutes an abuse of discretion has been described as one that is 'so irrational or arbitrary that no reasonable person could agree with it.' [Citation.]" (*Sargon, supra,* 55 Cal.4th at p. 773.)  This court may find error in the trial court's admission of expert testimony " 'only if the witness " '*clearly lacks* qualification as an expert.' " [Citation.]' " (*People v. Singleton* (2010) 182 Cal.App.4th 1, 21.)

b.  *Romo's objection below and the trial court's ruling*.

At the hearing on the summary judgment motion, Romo's counsel objected to the qualifications of Union Pacific's expert, stating:  "Dr. Nony['s] . . . declaration has no foundation, because he's an industrial hygienist. . . .  [U]nder [FELA], you have to show that there is no chance essentially that the exposures to diesel and asbestos or other carcinogens caused or contributed even the slightest to Mr. Romo's cancer.  For that, they would need an epidemiologist and a doctor.  [¶]  So Dr. Nony's testimony is irrelevant to the basis on which they brought the motion.  And it's irrelevant and lacks foundation on causation, because he's not the correct kind of expert to negate causation."

The trial court overruled Romo's objection to Dr. Nony's qualifications, stating:  "With respect to the objections, [Romo] did not submit written objections in advance of the hearing, but did interpose an oral objection to the declaration of defendant's expert on the grounds it was not in the area of expertise, that Dr. Nony . . . is not the proper expert to hear the matter.  [¶]  The

8

court did review the qualifications of this expert as set forth in the declaration under penalty of perjury, indicating among other things, paragraph 4, 'Dr. Nony is a certified industrial hygienist as determined by the American Board of Industrial Hygiene.' It gives his [certification] number. [¶] Paragraph 5, 'He's a certified safety professional as determined by the Board of Safety Professionals.' [¶] Paragraph 6 indicates areas he's been involved in: areas of toxicology, risk of exposure to chemicals, et cetera. [¶] Paragraph 6 [sic], number of various societies, Society of Toxicology, South Central Chapter of Society of Toxicology, Occupational and Public Health Specialty Section of the Society of Toxicology, American Conference of Governmental Industrial Hygienists, American Industrial Hygienists. [¶] I'm paraphrasing much of the content of paragraph 7 of the declaration. [¶] Paragraph 8 of the declaration indicates that Dr. Nony, the expert of the defense, has written numerous peer-reviewed publications in toxicology and related fields. It goes on from there. It discusses what he reviewed, including epidemiology studies. [¶] So the court does overrule [Romo's] oral objection to the qualifications of Dr. Nony on the grounds he was not a proper expert to render the opinion."

    c. *No merit to Romo's contention that the trial court abused its discretion in determining that Dr. Nony was qualified to render an opinion as to causation.*

  Romo contends the trial court abused its discretion in overruling his objection to Dr. Nony's qualifications because Dr. Nony is an industrial hygienist, rather than a medical doctor, and therefore was not qualified to opine on the etiology of Romo's cancer. Romo asserts that Dr. Nony's curriculum vitae, which the trial court used to assess his qualifications, reflects that

9

Dr. Nony had not worked on any projects or written any articles that specifically mentioned the carcinogenic effects of exposures to the substances on which he opined in his report. Also, Dr. Nony's pre-doctoral work involved isolating kidney cells from rabbits after toxic chemical exposures, and studying the effects of neurotoxins on the brains of rodents. Romo argues that based on this experience, Dr. Nony was not competent to opine that Romo's 16-year exposure to diesel fuel, diesel exhaust, benzene, creosote, rock dust, railroad ballast, penta oil, asbestos, manganese, green dirt from copper mines, workplace industrial solvents, as well as dust and fibers (from rock, silica, coal and asbestos) played no role in causing Romo's esophageal cancer.

Contrary to Romo's argument, Dr. Nony's lack of a medical degree did not render him unqualified to opine that Romo's workplace exposures were unrelated to his esophageal cancer. In *People v. Catlin* (2001) 26 Cal.4th 81, 131–132, which held that a clinical toxicologist with a Ph.D. in physiology and pharmacology was properly permitted to testify regarding the victim's cause of death from paraquat poisoning, the Supreme Court stated that "[q]ualifications other than a license to practice medicine may serve to qualify a witness to give a medical opinion. (*People v. Villarreal* (1985) 173 Cal.App.3d 1136, 1142 ['Because of the dramatic growth of diverse interdisciplinary studies in recent times, often individuals of different nonphysician professions are called upon to give medical opinions or at least opinions involving some medical expertise']; see *People v. Fierro* (1991) 1 Cal.4th 173, 224*; Brown v. Colm* (1974) 11 Cal.3d 639, 645 [referring to an "unmistakable general trend in recent years . . . toward liberalizing the rules relating to the testimonial qualifications of medical experts'].)" (Accord, *Hernandez v. Amcord, Inc.* (2013)

10

215 Cal.App.4th 659, 673 [no requirement that " 'a person with an M.D. after their name' " expressly state that the defendant's product caused the plaintiff's injury to a reasonable degree of medical probability].)

Here, irrespective of the fact that Dr. Nony is not a medical doctor, the record reflects that he has held a Ph.D. in interdisciplinary toxicology since 2001, and since receiving his Ph.D. he has been actively involved in the areas of toxicology, human health and environmental risk assessment, industrial hygiene, and worker safety. Also, since 2003, he has worked as a consultant in the area of human and environmental toxicology and has been involved in numerous projects involving the assessment of chemicals and the risk of exposure to those chemicals, including diesel exhaust and benzene.

Dr. Nony's declaration explained: "To properly form an opinion on causation, one must apply the generally accepted methodology for causation analysis. The first step in this methodology is to determine if the alleged exposure at issue is capable of causing the claimed disease (general causation). If the criteria for general causation are satisfied, a specific causation analysis is conducted to determine if the alleged exposure is the most likely cause of that disease in the plaintiff (specific causation). To these ends, I have compiled and reviewed the available scientific literature and medical literature relating [to] esophageal cancer and the chemicals to which Mr. Romo was allegedly exposed during his employment with [Union Pacific]. The various pleadings and other materials indicate alleged exposures to the following chemicals: diesel fuel, diesel exhaust, benzene, rock dust/railroad ballast, creosote, Penta Oil, Asbestos, Manganese, Green Dirt from Copper Mines, Industrial Solvents,

11

Rock/Silica/Mineral/Coal/Asbestos dust and fibers." Dr. Nony concluded that a review of the relevant literature shows there is "insufficient medical and scientific literature to support [a] nexus between [any of these substances] and Mr. Romo's disease, esophageal cancer, from a general or specific causation perspective."

In view of Dr. Nony's education and experience, we perceive no abuse of discretion in the trial court's determination that he was qualified to opine that the medical and scientific literature does not support a nexus between the substances to which Romo allegedly was exposed during his employment and his esophageal cancer. Having determined that Dr. Nony was qualified to render an opinion in that regard, the trial court was entitled to rely on Dr. Nony's opinion so as to shift the burden to Romo to raise a triable issue of material fact.[5]

2. *Trial court acted within its discretion in refusing to consider Romo's belated expert declarations.*

a. *Trial court's ruling.*

At the hearing on the motion, the trial court sustained Union Pacific's objections to the opposing expert declarations of Drs. Chiodo, Landolph, and Smith, stating the declarations "were not filed more than 14 days [preceding] the original notice date of hearing. [¶] These declarations were filed and served on the

---

[5] Romo also argues, in conclusory fashion, that even assuming Dr. Nony was qualified to render an opinion as to causation, his theory that Romo's cancer was not caused by the alleged exposures cannot be reasonably assessed for reliability because it consisted solely of a review of literature "that was self-selected by a paid defense expert." We reject this argument, which merely goes to the weight of Dr. Nony's opinion, not to his qualifications as an expert.

12

same date [the] defense's reply papers were due, therefore are untimely pursuant to CCP 437c, subdivision [(b)(2)]."

      b. *Standard of review*.

The parties agree that the trial court's exclusion of Romo's late-filed declarations is subject to the deferential abuse of discretion standard. (See *Meeks v. Autozone, Inc*. (2018) 24 Cal.App.5th 855, 861.)

      c. *No abuse of discretion in trial court's exclusion of Romo's late-filed opposing expert declarations.*

As noted, an opposition to the motion for summary judgment shall be served and filed not less than 14 days preceding the noticed or continued date of hearing, and a reply to the opposition shall be served and filed by the moving party not less than five days preceding the noticed or continued date of hearing. (§ 437c, subds. (b)(2) & (b)(4).) These deadlines apply "unless the court for good cause orders otherwise." (*Ibid*.) Here, the summary judgment motion initially was calendared for October 23, 2019. Therefore, Romo's opposition papers were due by October 9, 2019, and Union Pacific's reply papers were due by October 18, 2019.

On October 18, 2019, the same day that Union Pacific filed its timely reply papers, Romo belatedly filed opposing expert declarations by Drs. Landolph and Chiodo, and on October 21, 2019, Romo filed an expert declaration by Dr. Smith. Although the time for filing his opposition papers had passed, Romo filed these expert declarations without making a motion to be relieved of the obligation to timely file his opposition evidence 14 days prior to the date set for hearing. (§ 437c, subd. (b)(2).)

On October 21, 2019, presented with these late-filed opposing declarations, Union Pacific filed a supplement to its

13

evidentiary objections.  Union Pacific asserted that Romo's three expert declarations were inadmissible as untimely, and that section 437c, subdivision (b)(2) prohibited the filing of any opposition papers less than 14 days prior to the scheduled hearing.  In view of the statutory deadline for filing opposition papers, Union Pacific's objections to the declarations were well taken.

The fact that the matter subsequently was reassigned to another department of the superior court on October 23, 2019, and that on October 31, 2019, the new judicial officer continued the hearing to November 19, 2019, is of no assistance to Romo. He cites no authority for the proposition that the continuance of the hearing on the motion for summary judgment, *after Union Pacific already had filed its reply papers*, automatically reopened the briefing schedule and entitled Romo to supplement his opposition papers without obtaining leave to do so.  The summary judgment statute contemplates the filing of one motion, one opposition and one reply (§437c, subd. (b)(1), (b)(2), & (b)(4)), and the timing for the filing of opposition papers is 14 days before the hearing date (either as originally noticed or the continued date if it has been continued).  Once the opposition papers had been filed (and indeed, here, the reply papers also had been filed), a continuance of the hearing date did not inherently extend the time for filing additional documents or excuse the timely filing of opposition papers.

We note that once Romo obtained the necessary declarations from his experts, he could have moved below for a revised briefing schedule, particularly in light of the continuance of the summary judgment hearing to November 19, 2019.  Had the briefing period been extended, Romo's opposition papers

would have been timely, and Union Pacific would have had the opportunity to file a proper reply to the opposition papers. Instead, Romo unilaterally filed belated expert declarations that overlapped with Union Pacific's timely reply papers. The trial court properly found that Romo's opposing expert declarations were untimely. (§ 437c, subd. (b)(2).)

Romo also raises an issue with respect to the trial court's statement at the October 31, 2019 trial setting and motion setting conference "that the motion for summary judgment is fully briefed." Romo contends this statement created "an inherent ambiguity" as to whether the trial court would consider his expert declarations in ruling on the motion for summary judgment. Romo then reasons, "if [his] counsel believed the curative declarations were deemed timely by the court it would have been redundant to ask for a new briefing schedule." The argument is unpersuasive. The state of the record at the time of the October 31, 2019 conference was that there were pending evidentiary objections by Union Pacific to Romo's late-filed declarations. The trial court's statement at the conference that the matter was "fully briefed" did not reasonably support a conclusion by Romo that the trial court would overrule Union Pacific's evidentiary objections to the expert declarations to which Union Pacific had not had a chance to reply, and that the court would consider his belated expert declarations in ruling on the matter.

In an effort to overcome his failure to file timely expert declarations in opposition to summary judgment, Romo relies on case law that FELA is to be liberally construed to further its goal of shifting the cost of worker health in railroad operations from employees to employers. (See, e.g., *Urie v. Thompson* (1949) 337

15

U.S. 163, 181–182, fn. 20; *Norfolk Southern Ry. Co. v. Sorrell* (2007) 549 U.S. 158, 179 (conc. opn. of Ginsburg, J.).)  However, it is a " 'general and unassailable proposition . . . that States may establish the rules of procedure governing litigation in their own courts,' even when the controversy is governed by substantive federal law.  (*Felder v. Casey* (1988) 487 U.S. 131, 138 [101 L.Ed.2d 123, 137, 108 S.Ct. 2302].)"  (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 409.)

Moreover, federal authority specifically has rejected the argument that a FELA plaintiff should be granted procedural leeway in opposing a summary judgment motion.  *Claar v. Burlington Northern R. Co.* (9th Cir. 1994) 29 F.3d 499 (*Claar*), which involved the Federal Rules of Civil Procedure, stated:  "We deny plaintiffs' request that we give them still another chance to submit admissible affidavits.  Parties are not permitted to file late affidavits in support of their opposition to a motion for summary judgment without invoking Fed.R.Civ.Proc. 56(f) [now 56(d)] and indicating why they cannot timely file the required affidavits.  [Citation.]  Plaintiffs did not invoke Rule 56(f), nor have they suggested any reason for their failure to file timely, acceptable affidavits . . . .  We decline to permit them to remedy their deficiency at this late stage of the proceedings."  (*Claar*, at p. 504.)

Therefore, we reject Romo's contention that as a FELA plaintiff he was entitled to lenity, and conclude the trial court acted within the bounds of its discretion in excluding Romo's late-filed expert declarations.[6]

---

[6]    Romo assumes that had the belated declarations been admitted, the trial court necessarily would have denied Union Pacific's motion for summary judgment.  However, Romo's

16

3. *Romo's request on appeal for relief under section 473, subdivision (b) is unavailing.*

Romo's final contention is that "discretionary relief under CCP 473(b) is merited where the only reason for exclusion of [his] experts was the perceived lateness or inadequacy of the expert declarations." Romo asserts he "is entitled to relief [under section 473] where the nature of mistake or neglect [is] excusable."

However, faced with Union Pacific's objection to his belated expert declarations, Romo did not seek relief below pursuant to section 473 on the grounds that his delay in filing the opposing expert declarations was due to mistake or excusable neglect, nor did he file a declaration showing reasonable cause for his belated opposing declarations.[7] Because Romo did not bring a motion in the court below pursuant to section 473, he cannot assert as error

---

responsive separate statement of disputed and undisputed facts, which preceded his expert declarations, did not cite to his experts' declarations; it merely cited the experts' reports, to which the trial court sustained objections. Further, Romo did not file an amended separate statement that cited to his experts' declarations. Under the so-called Golden Rule of summary adjudication, if a fact " ' "is not set forth in the separate statement, it does not exist." ' " (*City of Pasadena v. Superior Court* (2014) 228 Cal.App.4th 1228, 1238, fn. 4, italics omitted.) Therefore, even if Romo's expert declarations had been admitted, his opposition papers still would have been inadequate.

[7] In order to be entitled to relief under section 473, the moving party must act diligently in seeking relief and must submit affidavits or testimony demonstrating a reasonable cause for the default. (*Elston v. City of Turlock* (1985) 38 Cal.3d 227, 234.)

17

the trial court's failure to grant him relief that he never requested.

Notwithstanding his failure to move below under section 473, Romo requests this court to vacate the summary judgment with leave to file his expert declarations. However, "[w]e cannot consider [this] belated request for section 473 relief for the first time on appeal." (*Taylor v. Hayes* (1988) 199 Cal.App.3d 1407, 1409, fn. 2.) Thus, Romo's request for an appellate reversal pursuant to section 473 must be rejected.

## DISPOSITION

The judgment is affirmed.  Union Pacific shall recover its appellate costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

LAVIN, J.

DHANIDINA, J.

19